**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**O. LIQUIDATING CORPORATION.**

**No. 13420.**

United States Court of Appeals
Third Circuit.

Argued Feb. 23, 1961.

Decided June 14, 1961.

Douglas A. Kahn, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attorneys, Dept. of Justice, Washington, D. C., on the brief), for petitioner.

John S. Chapman, Jr., New York City, for respondent.

Before KALODNER, STALEY and FORMAN, Circuit Judges.

KALODNER, Circuit Judge.

Did the Commissioner of Internal Revenue abuse his statutory discretion in refusing to grant his consent to a change in the taxpayer's method of accounting for a material item of gross income?

That is the critical question presented by the Commissioner of Internal Revenue's petition for review of the Tax Court decision which answered it in the affirmative.[1]

Treasury Regulations 118, § 39.41–2, relating to Sections 41 and 42 of the Internal Revenue Code of 1939 [2] provide in relevant part as follows:

"(c) A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. * * * Permission to change the method of accounting will not be granted unless the taxpayer and Commissioner agree to the terms and conditions under which the change will be effected. * * *"

The relevant facts, as stipulated and found by the Tax Court, are not in dispute and may be summarized as follows:

The O. Liquidating Corporation ("taxpayer"), has at all times kept its books and reported its income on a calendar year and accrual basis. In 1918 taxpayer established, and has since broadened and continuously maintained, a group insurance plan for its employees. The premiums on the policies obtained pursuant to that plan were paid by taxpayer in monthly installments. All of the policies here involved were written by one mutual insurance company and all had a policy year coterminous with the calendar year. With one exception, each of the policies contained an identical provision, which is set out in the margin,[3] for

---

1. The Memorandum Findings of Fact and Opinion of the Tax Court are reported at 19 CCH Tax Ct.Mem. 154 (1960).

2. 26 U.S.C.A. 1952 ed., Sections 41, 42.

3. "The surplus, if any, to be distributed upon this policy as a dividend shall be ascertained and distributed by the Society annually as of each policy anniversary provided this policy shall have been continued in force by the payment of all premiums hereunder to such policy anniversary; otherwise the Society shall not distribute any surplus upon this policy.

the payment of annual dividends.[4] Pursuant to that provision, the actuarial department of the insurance company would, in January of each year, compute the surplus earned in the prior year and recommend a dividend formula to the board of directors. At its regular meeting in February, the board would consider the actuarial report and determine the amount of dividend, if any, to be distributed.

The policies here involved were purchased on varying dates beginning with 1941. Taxpayer has consistently followed the practice of recording on its books the amount of the monthly insurance premiums as an expense in the calendar year in which paid. During the years 1941 through 1952, inclusive, taxpayer consistently followed the practice of recording as of the year end an amount representing an accrual of the dividends to be paid by the insurance company and to be received by taxpayer in the subsequent year, which amount was recorded in the insurance expense account as an off-set to the gross premiums recorded therein for such year. In its federal income and excess profits tax returns for all years prior to 1953, petitioner claimed as a deduction for group insurance expense the net amount remaining after the reduction of the amount of gross premiums paid within the calendar year by the amount of dividends recorded as an accrual as of the year end.

Thus, for the year 1949, taxpayer recorded in its insurance expense account gross premiums in the amount of $170,641.05 and an accrual in the amount of $37,713.05, representing dividends to be paid by the insurance company and to be received by taxpayer in the year 1950, leaving a net expense of $132,928.00 which was claimed and allowed as a deduction in its federal income tax return for such year. During the calendar year 1950 taxpayer received insurance dividends in the amount of $37,713.05.

During the years 1941 through 1949, taxpayer accrued as of the end of the year, the exact amount of dividends that were to be received by it in the subsequent year. In 1950, taxpayer underaccrued the amount of the dividend it subsequently received in 1951, and in 1951, taxpayer overaccrued this item. In 1952 taxpayer again estimated the exact amount.

Taxpayer, in order to correct the 1950 underaccrual and the 1951 overaccrual, made adjustments in its 1951 and 1952 tax returns, the years in which the dividend was actually received. The Commissioner, however, upon auditing taxpayer's returns for 1950, 1951 and 1952 made the necessary adjustments in the years in which the dividend was accrued, 1950 and 1951 respectively.

In 1953, taxpayer made a significant departure from its prior consistent method of accounting for the insurance dividends. In that year, taxpayer, without requesting the consent of the Commissioner, accrued no dividends and deducted the full amount of its group insurance premiums from its federal income and excess profits tax return. In 1954, taxpayer received dividends totalling $114,117.44, which amount it reported on its return for that year.[5] The obvious effect of this change was a deduction for group insurance expense for the year 1953 consisting of gross premiums only with no corresponding off-set for insurance dividends.

In 1956, upon examination of taxpayer's federal income and excess profits tax return for the year 1953, the Commissioner made an adjustment decreasing

---

Any surplus apportioned to this policy in accordance with this provision shall be paid in cash to the Employer, or, upon written notice to the Society by the Employer, may be applied by the Employer to the payment of any premium hereon."

4. The record does not disclose the dividend provision contained in one of the policies.

5. Taxpayer received a dividend of $72,531.79 in 1953. However, that item had been accrued and reported by it in 1952, pursuant to its consistent accounting practice. Had taxpayer adhered to its prior method of accounting for this item, it would have accrued and reported in 1953 the dividend it received in 1954.

taxpayer's claimed deduction for group insurance expense by $114,117.44, i. e., he determined that the dividend received by taxpayer in 1954 should have been accrued and reported in 1953. As a result of this adjustment, taxpayer's net deduction for insurance expenses was reduced from $265,327 to $151,209.56. It is this adjustment which is the single item in dispute here.

The Tax Court held that, since the taxpayer had no right to receive the insurance dividends prior to the determination of the board of directors of the insurance company to set aside a certain amount of surplus for distribution, which determination was always made in the year in which the dividend was paid, the taxpayer's method of accruing and reporting this item in the year prior to payment (receipt) was erroneous. The court further held that the change in the treatment of this item by taxpayer in its 1953 federal tax return did not constitute a change in its method of accounting which would require the prior approval of the Commissioner. Accordingly, the Tax Court held that the dividend received by taxpayer in 1954 accrued in that year rather than in 1953 and that the dividend was properly reported in the later year. However, the court accepted the Commissioner's alternative argument that, in view of the above holdings, the taxpayer erred in failing to report in 1953 the dividend it received in 1953 but which it had accrued and reported in 1952. The court adjusted the 1953 return accordingly and determined a deficiency of $50,-772.28 for that taxable year.[6] In a dictum, however, the court stated that since the dividend received in 1953 had already been accounted for in 1952, "it appears that petitioner [taxpayer] will have adequate relief from double inclusion of an item of gross income by virtue of those sections [1311 et seq.] of the 1954 Code."[7] The net result of the Tax Court's holding, and of its dictum (if applied), is that one year's dividend will

be deleted and the net insurance expense deduction for that year increased to that extent.

On this appeal, the Commissioner does not contest the Tax Court's determination that the annual dividends accrued in the year of receipt so that the taxpayer's former method of reporting the insurance dividends was incorrect under the accrual method of accounting. He contends, however, that under the applicable statutes and Regulations, a taxpayer may change the method of accounting employed in reporting his income only if he first obtains the consent of the Commissioner; that the reason for this rule is that a change of accounting method will normally involve a distortion of the taxpayer's income for the year of change and, in order to protect the Government against a loss of revenues, the Commissioner conditions his consent to the change on the taxpayer's acceptance of adjustments which would prevent the avoidance of tax liability. The Commissioner further urges that this rule applies not only to a change in an over-all method of accounting but also to a change in the method of accounting for a material item; that the change which the taxpayer made in the instant case constitutes a "change" requiring the prior approval of the Commissioner notwithstanding that taxpayer's prior method of accounting for this item was erroneous, and, therefore, the Commissioner properly, in making the adjustments here in issue, refused to allow taxpayer to unilaterally change its method of accounting for this item.

Taxpayer, on the other hand, contends that, in view of the uncontested determination of the Tax Court that the insurance dividends were properly reportable in the year of receipt under the accrual method of accounting, no other method would "clearly reflect income" and that the Commissioner "may not insist upon adherence to a method which fails to 'clearly reflect income.'" It

6. The deficiency determined by the Commissioner, using the dividend for 1954 rather than 1953, was $78,851.43.

7. 19 CCH Tax Ct.Mem. at 159.

argues "that correction of an error to conform to a long-standing method of accounting is not a change in accounting method and the Commissioner may not require the taxpayer to perpetuate an error." Taxpayer further asserts that if equitable considerations are relevant in this determination, it is not possible here to determine where as between the Government and the taxpayer the equities rest in view of the fact that for years taxpayer has been prepaying the tax on this item and that taxpayer paid taxes to which it would not otherwise have been subject at the expiration of the excess profits tax of World War II in 1946 and whenever the tax rates were reduced. Finally, taxpayer urges that we modify the Tax Court's decision, which brought into 1953 the dividend which had already been reported in 1952 (relief from which the Court indicated could be secured by way of a claim for refund under § 1311 et seq. of the 1954 Code, 26 U.S.C.A. § 1311 et seq.), by directing the deletion of this item from the 1953 return—execute the dictum of the Tax Court as it were.

Section 42 of the Internal Revenue Code of 1939 provides that "items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period." Section 41 of the 1939 Code provides that

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect income."

Pertinent Treasury Regulations, earlier set forth, provide that a taxpayer who desires to change the method of accounting employed in reporting his income must first "secure the consent of the Commissioner" to the change, and that permission to make it will not be granted "unless the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected."

The taxpayer's argument proceeds as follows:

"The taxpayer may not employ a method of accounting which does not clearly reflect income. If the taxpayer's method fails clearly to reflect income, then under Section 41 of the Internal Revenue Code of 1939, the Commissioner can insist that a method be employed which does clearly reflect income. * * *"

"However, the Commissioner has not power to require a taxpayer, for any reason, to employ an accounting method which fails clearly to reflect income. His right to determine what method a taxpayer shall employ has limitations. One important limitation—the limitation which here controls—is that no authority is vested in the Commissioner to disregard the actual transaction and to readjust the income on a basis which would not clearly reflect income."

This argument is premised on Caldwell v. Commissioner, 2 Cir., 1953, 202 F.2d 112; Commissioner of Internal Revenue v. Frame, 3 Cir., 1952, 195 F.2d 166; Commissioner of Internal Revenue v. Mnookin's Estate, 8 Cir., 1950, 184 F.2d 89, and subsequent similar cases. Those cases involved involuntary changes in the method of accounting of taxpayer required by the Commissioner because the old method of accounting did not clearly reflect income and in them the Commissioner attempted to make the necessary adjustments so that items would be neither omitted nor duplicated. The courts held that the taxpayer could not be required to make such adjustments. As

stated in Advance Truck Co. v. Commissioner, 9 Cir., 1958, 262 F.2d 388, 391–392:

"We believe that it is a fair statement to say that the rationale of such cases is that the Commissioner is not empowered in the year of change-over to assess a deficiency in tax for the year of the change-over premised on items of income which the taxpayer should have, but failed to include, in his income tax return for the tax year or years prior to the change, based upon the method employed by the taxpayer in keeping his books of account for such prior year or years."

The rule stated is not applicable here for the simple reason that the Commissioner did not attempt to change taxpayer's method of accounting and impose adjustments, but, on the contrary, he sought only to prevent a change in the taxpayer's method of accounting for this item to which he had not first given his consent and to require adherence to the method used for many years prior to 1953. This distinction was recognized in Goodrich v. Commissioner, 8 Cir., 1957, 243 F.2d 686, at pages 688–689, where it was said:

"It [the Regulation] allows him [the Commissioner] to impose adjustments in relation to a taxpayer's income status of other years, only as a term or condition on which he will consent to a change in the taxpayer's method of accounting for purposes of the latter's current tax return. But it does not allow him to impose such adjustments in relation to the taxpayer's income status of other years, except as a matter of agreement or acceptance on the taxpayer's part.

"If the taxpayer refuses to agree to the terms or conditions so imposed and to accept the adjustments required by the Commissioner to be made, the result is in general to leave the situation simply as one in which the taxpayer is without legal right to make use of a change in his ac-

counting method for purposes of his current taxability and return. * *

"*It is not open to either the Commissioner or the taxpayer unilaterally to make a shift*, whether of income or of outgo, to another year than that for which its tax status, 'in accordance with the method of accounting regularly employed in keeping the books of such taxpayer', has properly been created. Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 286–287, 64 S.Ct. 596, 599, 88 L.Ed. 725." (Emphasis supplied.)

The rationale of the Regulation here involved is that virtually any material change in the method of reporting income or deduction items will result in a distortion of taxable income, and it is the Commissioner's responsibility to insure that the distortion will not be to the detriment of the Government. The Commissioner accomplishes this by withholding his consent until the taxpayer agrees to adjustments that will prevent, *inter alia,* duplication of deduction items or omission of income items as a result of the change. Brookshire v. Commissioner, 4 Cir., 1960, 273 F.2d 638, certiorari denied 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1523.

■ On review of the record we agree with the Commissioner's contention that while taxpayer did not change its overall method of accounting it did change its treatment of a significant item—the insurance dividends which amounted to $114,000—and that its action constituted a change in the method of accounting within the meaning of the Treasury Regulations. The Tax Court, in our opinion, erred in finding to the contrary.

In Rev.Rul. 59–285, 1959–2 Cum.Bull. 458, the Internal Revenue Service, in confirming its interpretation and practice with respect to Section 41 of the Internal Revenue Code of 1939 stated in part (1959–2 Cum.Bull. pp. 459–460):

"Under the 1939 Code, the prior consent of the Commissioner is required in order for a taxpayer to

change his method of accounting *with respect to a material item. Prior consent* must be secured from the Commissioner whether or not the taxpayer regards the method from which he desires to change to be proper. \* \* \*

"Accordingly, under the 1939 Code as well as under the 1954 Code, taxpayers, employing the accrual method of accounting, who have consistently deducted *a material item* in the year paid rather than the year accrued, must obtain *the prior consent* of the Commissioner before changing such method of accounting, whether or not the taxpayer regards the method from which he desires to change to be proper." (Emphasis supplied.)

▇ It is well-settled that administrative interpretation of the Internal Revenue Service is entitled to great weight and should be followed unless clearly inconsistent with the statute. Corn Products Refining Co. v. Commissioner, 1955, 350 U.S. 46, 52–53, 76 S.Ct. 20, 100 L.Ed. 29. The interpretation stated is certainly not inconsistent with the statute.

▇ It is not dispositive that taxpayer's former consistent method of reporting the insurance dividends in the instant case was not correct under the accrual accounting system since it could not be changed without the Commissioner's prior consent.

As was said in Advertisers Exchange, Inc., 1956, 25 T.C. 1086, 1092–1093, affirmed 2 Cir., 1957, 240 F.2d 958,

"Consistency is the key and is required regardless of the method or system of accounting used. \* \* \* And a change from one method of accounting to another is seldom possible without some distortion of income. Thus, respondent [Commissioner] may, as here, reject any change in the accounting treatment *of items of income* made without his prior consent and approval of compensating adjustments to insure that distortions arising therefrom are not

at the expense of the governmental revenue. Kahuku Plantation Co. v. Commissioner [9 Cir.], 132 F.2d 671.

"As heretofore noted, the effect of respondent's determination is to require the continued use of the accounting method consistently employed by petitioner for a number of years. *To do so is within the broad administrative discretion accorded respondent under the statute and is not to be disturbed unless an abuse of discretion is evident. \* \* \**" (Emphasis supplied.)

To the same effect see 2 Mertens, Federal Income Taxation, §§ 12.08–.09 (rev. ed. 1955).

The "broad discretion" of the Commissioner in determining whether to consent to a change was settled in Brown v. Helvering, 1934, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725. See also Commissioner of Internal Revenue v. Hansen, 1959, 360 U.S. 446, 467, 79 S.Ct. 1270, 3 L.Ed. 2d 1360.

It may be noted that the Tax Court, in its opinion, did not advert to the "broad discretion" of the Commissioner and did in fact not hold that he had abused his statutory discretion in refusing to give retroactive consent to taxpayer's change in its method of accounting for the insurance dividends here involved.

On consideration of the record we certainly cannot say that the Commissioner abused his statutory discretion in refusing to grant retroactive consent in the instant case to taxpayer's unilateral change in its method of accounting of the very sizeable dividend income involved.

For the reasons stated the Decision of the Tax Court will be reversed and the cause remanded with directions to proceed in accordance with this opinion.

FORMAN, Circuit Judge (dissenting).

I cannot agree with the majority that there was any change in the accounting method of a material item of the taxpayer's income. I find with the Tax Court that the treatment by the taxpayer of its

dividend income in years previous to 1953 "was an erroneous treatment and inconsistent with the method of accounting regularly employed by [taxpayer] in keeping its books." It did not reflect in its 1953 return anticipated 1954 dividends to which it had no claim of right in 1953. In doing so it was correctly applying the accrual method of accounting which it had adopted and the change it effected did not require the consent of the Commissioner. Cf. Beacon Publishing Co. v. Commissioner of Internal Revenue, 10 Cir., 1955, 218 F.2d 697.

I would affirm the decision of the Tax Court.