**AMERICAN CAN COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**AMERICAN CAN COMPANY, Respondent.**

**No. 254, Docket 27694.**

United States Court of Appeals Second Circuit.

Argued May 2, 1963.

Decided May 29, 1963.

Charles C. MacLean, Jr., of Dewey, Ballantine, Bushby, Palmer & Wood, New York City (John H. Perkins, Jr., Ray I. Hardin, Merton Sarnoff, and Everett L. Jassy, of Dewey, Ballantine, Bushby, Palmer & Wood, New York City, on the brief), for American Can Co., petitioner and cross-respondent.

John B. Jones, Jr., Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., and Harry Baum and Robert L. Waters, Attys., Dept. of Justice, Washington, D. C., on the brief), for Commissioner, respondent and cross-petitioner.

Before CLARK, SMITH and HAYS, Circuit Judges.

CLARK, Circuit Judge.

We are asked to review a decision of the Tax Court, 37 T.C. 198, by both the taxpayer and the Commissioner. These two appeals are related only by the fact that both concern the same taxable year, 1953. We shall, therefore, treat them separately.

(1) THE ISSUE AS TO CAPITAL GAINS (TAXPAYER'S PETITION FOR REVIEW)

The taxpayer has been the nation's leading manufacturer of food and beverage containers since the early 1900's when it played a major role in the successful commercial development of the sanitary can. An indispensable element in this marketing revolution was the manufacture of "closing equipment" —machines that affix the tops and bottoms of cans by forming the metal to the body of the container, thereby rendering obsolete the less sanitary method of soldering. For many years the taxpayer pursued a policy of leasing, never selling, its closing equipment to customers at nominal rentals in order to promote the sale of its containers. But in United States v. American Can Co., D.C.N.D. Cal., 87 F.Supp. 18, this long-standing policy was found to violate the antitrust laws. Subsequent proceedings were ordered to determine the appropriate remedy. The Antitrust Division urged complete divestiture of American Can's closing equipment operations. The taxpayer, however, faced with a choice which it would rather not have had to make at all, found it more in its interest to contend for a less drastic remedy than to accede to the government's demands. It offered to undertake a sales program as part of the ordinary course of its business and was successful in winning the court's approval of this alternative remedy. A sales program was initiated under the supervision of a Special Master and the Department of Justice.

American Can Company seeks review of the Tax Court's decision—one judge dissenting—to treat the revenues from sales of closing equipment during 1953 as ordinary income, rather than as capital gains. Most of the machines sold during the taxable year were manufactured before the antitrust decree, but some were produced afterwards. The dispute centers on whether the closing equipment was "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." I.R.C.1939, § 117(j) (1) (B). The language has been construed to comprehend property held with a purpose to sell that is "substantial" or "essential," even if not "principal" or "chief." Securities & Exchange Commission Corp. v. United States, D.C.S.D.N.Y., 140 F.Supp. 717, 719, affirmed 2 Cir., 241 F.2d 416, cert. denied 354 U.S. 909, 77 S.Ct. 1294, 1 L. Ed.2d 1426. The taxpayer's sales of the closing equipment were undeniably impressive. It established a separate department to handle this phase of its business and conducted schools to train its customers' employees in the use of the machines. Beyond question, American Can Company had a substantial purpose to sell its closing equipment.

But the taxpayer would have us read I.R.C.1939, § 117(j) (1) (B) to require an ascertainment of its subjective intent. It argues that, since it was the compulsion of the antitrust decree, and not business policy, that resulted in the closing equipment being held for sale, capital gains treatment is warranted. We feel the Commissioner is on sounder ground in contending for an objective approach. Irrespective of motive or cause, the fact remains that in 1953 the taxpayer held the machines for sale as part of its ordinary trade or business. Cf. Ehrman v. C. I. R., 9 Cir., 120 F.2d 607, 610, cert. denied 314 U.S. 668, 62 S.Ct. 129, 86 L. Ed. 534.

We would note further that had the taxpayer been willing to divest itself of this line of its business, as was urged by the Antitrust Division, it would then have been entitled to capital gains treatment without question. Instead, the taxpayer chose, as the better of undesirable alternatives, to enter a new business: the sale, as well as the rental, of closing equipment. Thus, even looking to the motive or cause of the machines being held for sale, we cannot hold for the taxpayer. The fact of its subjective preference for its former—now illegal—manner of operation is singularly immaterial here. We therefore affirm on the taxpayer's petition.

(2) THE ISSUE AS TO THE CHANGE IN ACCOUNTING METHOD. (COMMISSIONER'S PETITION FOR REVIEW)

■ The Commissioner petitions for review of the Tax Court's holding that a taxpayer need not obtain his prior permission to change the method of accounting of a significant item when the change is to correct a previous, but erroneous, method. Ordinarily, of course, the taxpayer must obtain the Commissioner's consent to a change in accounting methods. I.R.C.1939, §§ 41, 43; Treas.Reg. 118, § 39.41–2(c). Here the taxpayer, without consulting the Commissioner, changed its accounting of local taxes and vacation pay from the cash basis to the accrual method so as to bring the manner of accounting these items into accord with its general method. The Tax Court, four judges dissenting, approved the change and allowed the deductions claimed. Its ruling is contrary to the holding of the Third Circuit in C. I. R. v. O. Liquidating Corp., 3 Cir., 292 F.2d 225, cert. denied O. Liquidating Corp. v. C. I. R., 368 U.S. 898, 82 S.Ct. 177, 7 L. Ed.2d 94, and of the Fifth Circuit, following the Third, in Wright Contracting Co. v. C. I. R., 5 Cir., 316 F.2d 249. The courts of appeals have the better view: A change in accounting method will almost certainly result in some distortion of taxable income, and the Commissioner must insure that such distortion is not overly detrimental to the government.

See C. I. R. v. O. Liquidating Corp., supra, 3 Cir., 292 F.2d 225, 230. The taxpayer insists that the Third Circuit case contravenes the Supreme Court decision in United States v. Consolidated Edison Co. of New York, Inc., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 356, aff'g Consolidated Edison Co. of New York, Inc. v. United States, 2 Cir., 279 F.2d 152. There the Commissioner contested Consolidated Edison's making a proposed change at all. Here the Commissioner is not necessarily opposed to the change in accounting method which the taxpayer wants to make; rather, he demands merely that taxpayer consult with the Internal Revenue Service before making the change so that a distortion of taxable income overly detrimental to the government will not result from the change. Thus the Consolidated Edison case does not conflict with the Court of Appeals decisions or the result we reach here.

The decision below is affirmed on the taxpayer's petition, reversed on the Commissioner's petition.