The **DORIC COMPANY**, Transferee of Kellerblock Corporation, Dissolved, Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Appellee.

No. 19264.

United States Court of Appeals
Ninth Circuit.

March 2, 1965.

Browning, Circuit Judge, dissented.

Warren V. Clodfelter, Seattle, Wash., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, Crombie J. D. Garrett, Attorneys all with Dept.

of Justice, Washington, D. C., for respondent.

Before MADDEN, Judge of the United States Court of Claims, JERTBERG and BROWNING, Circuit Judges.

JERTBERG, Circuit Judge:

Petitioner, The Doric Company, is a corporation organized under the laws of the State of Washington. It is a transferee of the assets of the Kellerblock Corporation, and is liable for any deficiencies in income tax, plus interest thereon, which may be determined to be due with respect to Kellerblock.

During the taxable year Kellerblock owned the Grosvenor House Apartments in Seattle, Washington, and kept its books of account and prepared its income tax returns on the accrual method of accounting with a fiscal year ended October 31st of each year.

Doric acquired the outstanding shares of Kellerblock at various times in 1957 and '58, and took over the full control of Kellerblock in the early part of 1958, including the management of its properties and direction of its affairs.

Kellerblock filed its separate income tax returns for the fiscal years ending October 31, 1955, 1956 and 1957, and for the short period November 1, 1957 ending January 31, 1958. Thereafter the income and expenses of Kellerblock were included in the consolidated returns of Doric, its parent company, and subsidiaries, until Kellerblock was dissolved.

The propriety and necessity of making the short period return is not in question.

On its return for the short period November 1, 1957 through January 31, 1958, Kellerblock reported a net operating loss of $23,188.16. Thereafter, it filed an application for tentative carryback adjustments for prior years as a result of the foregoing net operating loss, and received refunds for taxes and interest in respect to its fiscal years ending October 31, 1955 and 1956.

In his deficiency notice to the Doric Company the Commissioner made adjustments to the income and expenses as shown in the return of Kellerblock for the short period which eliminated the reported loss for that period and consequently the loss carry-backs for the years ended October 31, 1955 and October 31, 1956.

On its income tax return for the short period, Kellerblock claimed as a deduction real estate taxes in the amount of $59,694 and personal property taxes in the amount of $1,080, totalling $60,774.00, which under the law of the State of Washington, where the real and personal property was located, accrued on January 1, 1958, and for which Kellerblock, as owner of the property on January 1, 1958, was liable. Real property taxes were not levied until the second Monday of October, 1958. The personal property was listed and valued on May 20, 1958. Both became payable one-half on or before April 30, 1959, and the other half on or before October 31, 1959.

The accounting entries on the books of Kellerblock for the fiscal years ended October 31, 1955, '56 and '57, show that it consistently made monthly estimates of the property taxes which accrued on each January 1 falling within the taxable period, basing such estimates on one-twelfth of those taxes which accrued in the previous year. This was done for the first eleven months of each fiscal year and an entry was made on the twelfth month to adjust the accumulated total of the first eleven months to the exact amount which accrued on January 1 of the current fiscal year. Income tax returns for those years show that deductions were taken for real and personal property taxes which accrued on January 1 of each year, "dollar for dollar or penny for penny" as they were reflected in the monthly book entries for each fiscal year. These returns were audited by the Commissioner and no adjustments to such property tax deductions were proposed.

Kellerblock continued this practice for the months of November '57, December

'57, and January '58, basing the entry on one-twelfth of those taxes which accrued on January 1, 1957, exactly as it had done in previous years. No adjusting entry was made in the last month of the short period to correct the prior two months' accumulated total, to coincide with the actual property taxes which accrued on January 1, 1958. Kellerblock did not make this last adjusting entry for the short period because it was not until October of 1958 that Kellerblock would have been able to determine the exact amount of property taxes which accrued on January 1, 1958.

The income tax return for the short period was filed on March 12, 1959. By that time the exact amount of the taxes which had accrued on January 1, 1958 had been determined so that they could be claimed on the return consistent with the practice shown in previous returns.

On its return for the short period Kellerblock, in the schedule supporting its tax return, made the following explanation:

"SCHEDULE M, LINE 6—ADJUSTMENTS FOR TAX
PURPOSES NOT RECORDED ON BOOKS

"Real and personal property taxes accrued January 1,
1958, payable in 1959, deferred for accounting
purposes                                        $60,774.00"

---

In determining the deficiency for the short period the Commissioner disallowed as a deduction $45,580.50 ($\frac{9}{12}$ths) of the amount of $60,774.00 claimed for real and personal property taxes, with the following explanation:

"It is held that the allowable deduction for real and personal property taxes for the taxable year November 1, 1957 to January 31, 1958, is limited to a pro rata portion of the annual real and personal property taxes incurred."

The Commissioner concedes that Kellerblock did not, in the short return, effect a change in its over-all method of accounting for gross income or deductions.

The Tax Court determined that there were deficiencies in income tax for the fiscal years ended October 31, 1955 and October 31, 1956 in the amount of $4,062.96 and $5,238.73, respectively; that there was no deficiency in income taxes due from or overpayment due Kellerblock for the fiscal year ended October 31, 1957; and that there was a deficiency in income tax for the period November 1, 1957 to January 31, 1958, in the amount of $17,607.54, thus sustaining the Commissioner's determination that the taxpayer was not entitled to deduct, on its return for the three-month period ended January 31, 1958, all property taxes which accrued on January 1, 1958 but was entitled to deduct only $\frac{3}{12}$ths allocable to the three-month period. The effect was to allow a pro rata apportionment to November and December 1957 of property taxes which accrued on January 1, 1958, notwithstanding the fact that the property taxes which accrued January 1, 1957, had been deducted in the income tax return for the fiscal year November 1, 1956 ended October 31, 1957. The result is a double deduction and the deduction of an item in a year other than the one in which it accrued.

From the end result reached by the Tax Court it might be argued that the Court was of the view that Kellerblock had consistently followed, in respect to real property taxes, the "ratable accrual" method set forth in Sec. 461(c) (1) of the 1954 Code.

Section 461(a) states the general rule to be that the amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of

accounting used in computing taxable income.

Section 461(c) (1) deals with accrual of real property taxes and provides:

"If the taxable income is computed under an accrual method of accounting, then, at the election of the taxpayer, any real property tax which is related to a definite period of time shall be accrued ratably over that period."

The section does not apply to personal property taxes.

Section 461(c) (3) (A) provides that a taxpayer may, without the consent of the Secretary, make such an election for his first taxable year which begins after December 31, 1953, and ends after the date of the enactment of this title in which the taxpayer incurs real property taxes.

Section 461(c) (3) (B) provides that the taxpayer may, with the consent of the Secretary, make such an election at any time.

The facts hereinbefore set forth make it clear that the taxpayer never resorted to the "ratable accrual" method in reporting real property tax deductions. It does not appear that the Commissioner now contends otherwise.

█ It appears clear that Section 164 (d) (1) of the 1954 Code, which provides for the apportionment of taxes on real property between seller and purchaser, is not applicable to this case since the real property, upon which the taxes in this case accrued, was not sold.

There appears to be no dispute between the parties, and no question on the part of the Tax Court, that under the laws of the State of Washington the events which determined liability of Kellerblock for the property taxes in question occurred on January 1, 1958, and the ownership by it of the property on which such taxes accrued on that date. In the Government's brief it is stated:

"These amounts [real and personal property taxes] represent the taxes which were levied during the calendar year 1958, and for which

Kellerblock, as the owner of the property on January 1, 1958, was liable."

The same statement appears in the opinion of the Tax Court, together with the additional statement:

"Property taxes generally accrue on a fixed date, and in the State of Washington that date is January 1. I.T. 3374, 1940–1 C.B. 34; G.C.M. 27440, 1952–2 C.B. 97."

The statutes of the State of Washington do not impose a personal liability upon the owner of property upon which the state property taxes are assessed.

It is to be remembered that state property tax, when considered as a deductible item in a Federal Income Tax Return, is of a different nature than the usual deductible items which appear in such returns.

In the course of its opinion in Magruder v. Supplee, 316 U.S. 394, at page 399, 62 S.Ct. 1162, at page 1165, 86 L. Ed. 1555 (1942), the court stated:

"And it is misleading to speak of real estate taxes as 'applicable' to the fractional part of a tax year following purchase. Such taxes are simply one form of raising revenue for the support of government. They are not like rent, nor are they paid for the privilege of occupying property for any given period of time."

Since the property taxes in question accrued in a lump sum on January 1, 1958, we must determine as a matter of Federal Tax Law whether such taxes, in respect to an accrual basis taxpayer, likewise accrued in a lump sum on January 1, 1958, and we now turn to relevant provisions of the Internal Revenue Code for 1954.

Section 164 in pertinent part provides:

"§ 164. Taxes.

"(a) *General Rule.*—Except as otherwise provided in this section, there shall be allowed as a deduction taxes paid or accrued within the taxable year:

"(1) State and local, * * *. Real property taxes.

"(2) State and local personal property taxes.

" \* \* \* \* ."

Section 441 in pertinent part provides:

"§ 441. Period For Computation of Taxable Income.

" \* \* \*

"(b) *Taxable Year.*—For purposes of this subtitle the 'taxable year' means—

" \* \* \*

"(3) the period for which the return is made, if a return is made for a period of less than 12 months."

"§ 446. General Rule For Methods Of Accounting.

"(a) *General Rule.*—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

" \* \* \*

"(c) *Permissible Methods.*—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

"(1) the cash receipts and disbursements method;

"(2) an accrual method;

" \* \* \* ."

Section 461(a) in pertinent part provides:

"§ 461. General Rule For Taxable Year Of Deduction.

"(a) *General Rule.*—The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income."

■ Where the taxpayer's books are kept on the accrual basis, state property taxes are deductible in the year of accrual rather than in the year in which they are paid. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926); Simon J. Murphy Co. v. Commissioner of Internal Revenue, 231 F.2d 639 (6th Cir. 1956).

It is clear that the decision of the Tax Court turns on the bookkeeping practices of Kellerblock and not on the true nature of state property taxes which accrue on the property in a lump sum and do not relate to any other period of time except on the date on which such taxes accrue under state law. In this connection the Tax Court stated:

"Had Kellerblock continued to follow its monthly accrual method during the period November 1, 1957 to January 31, 1958, it would have made monthly accrual on its books during that three month period in respect to its property taxes, and it would have had a closing entry on its book for the three month period based upon such accrual which would have been deductible on its return. Instead it claimed in its return for that period a deduction of $60,774.00 which represented its liability for property taxes for the entire year 1958. This was inconsistent with the monthly accrual method it had followed in prior years. Having established that method it had to adhere thereto in the absence of permission by the Commissioner to effect a change. Under the 1954 Code such permission is required not only in connection with the change in the over-all method of accounting but also in the accounting treatment of any item."

■ The fact that monthly bookkeeping entries were made by Kellerblock is irrelevant in determining when state real property taxes may be deducted for income tax purposes by an accrual basis taxpayer. The bookkeeping entries were not a method of accounting which had any relation to state property taxes. It was a method of bookkeeping which assisted Kellerblock in comparing, month by month during the taxable year, current income and liabilities.

It is not disputed, and the Tax Court found that:

"During the taxable years Kellerblock owned and managed the Grosvenor House Apartments in Seattle. It kept its books of account and prepared its income tax return on an accrual method of accounting, with a fiscal year ending on October 31 of each year."

In our view Kellerblock was entitled to deduct in their entirety the property taxes in question in the income tax return filed by it for the period November 1, 1957 ended January 31, 1958. The unadjusted return clearly reflected taxable income for that period. The apparent distortion of its taxable income for that period results from the short period covered by the return, the propriety or necessity for filing which has not been questioned. A similar apparent distortion of income would have occurred, in favor of the Government, had Kellerblock realized an unusually large accrual of income during the short period.

We have reviewed the decision in Tennessee Life Insurance Company v. Phinney, 280 F.2d 38 (5th Cir. 1960), C.D. 364 U.S. 914, 81 S.Ct. 278, 5 L.Ed.2d 228, heavily relied upon by the Tax Court and the Government, but have not been persuaded to accept the view that state property taxes must be apportioned monthly by an accrual basis taxpayer because of monthly bookkeeping entries. Other cases relied upon relate either to deductions of items other than state property taxes, or to instances in which the taxpayer has changed his over-all method of reporting with or without the consent of the Commissioner.

As an alternate ground to support the decision of the Tax Court, the Commissioner states that the filing of a consolidated return for the period following the short taxable period here involved also required adherence to taxpayer's prior method of accounting for property taxes. The alternate ground is not mentioned in the Commissioner's notice of deficiencies in this case. Such

ground is nowhere mentioned in the decision of the Tax Court. We will not consider it here.

The order and decision of the Tax Court is reversed, and the cause is remanded to the Tax Court for further proceedings not inconsistent with the views expressed herein.

Circuit Judge BROWNING would affirm on the basis of the Tax Court's opinion and the many authorities holding that a taxpayer's method of accounting as to a material item of income or expense may not be changed without the prior consent of the Commissioner, even though the method followed by the taxpayer may have been erroneous. See, e. g., American Can Co. v. Commissioner of Internal Revenue, 317 F.2d 604, 606 (2d Cir. 1963); Wright Contracting Co. v. Commissioner of Internal Revenue, 316 F.2d 249, 254 (5th Cir. 1963); Broida, Stone & Thomas, Inc. v. United States, 309 F.2d 486 (4th Cir. 1962) (affirming 204 F.Supp. 841 (N.D.W.Va.1962)); Commissioner of Internal Revenue v. Liquidating Corp., 292 F.2d 225, 231 (3d Cir. 1961).