Herbert S. WITTE, Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 74–1426.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 21, 1975.

Decided May 22, 1975.

Rehearing Denied June 19, 1975.

Gary R. Allen, Atty., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and William A. Whitledge, Washington, D. C., were on the brief, for appellant.

Robert H. Wyshak, Los Angeles, Cal., with whom L. W. Wyshak, Los Angeles, Cal., was on the brief, for appellee.

Before TAMM, LEVENTHAL and ROBINSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

Appellant, Commissioner of Internal Revenue, challenges a ruling of the Tax Court permitting appellee, Herbert S. Witte, to alter his method of reporting gain derived from sale of certain real estate properties. The Tax Court held that since the taxpayer had been improperly reporting his gain he could correct his error without seeking permission from the Commissioner. The Commissioner contends that valid regulations and applicable case law require a taxpayer to secure approval of changes in accounting methods even when the taxpayer proposes to adopt the only correct method. For the reasons set forth below, we reverse the decision of the Tax Court and remand the case for further proceeding.

## I. BACKGROUND

The facts underlying the Commissioner's determination of deficiencies in appellee's federal income taxes for calendar years 1962–64 are fully developed in the decision of the Tax Court. Herbert S. Witte, P–H Tax Ct.Mem. ¶ 72,232, at 1187–90 (1972). A brief overview of the basic dispute should provide sufficient background for the limited issue presented in this appeal.

In 1956 and 1957, appellee Witte and Robert C. Monroe acquired approximately 960 acres of unimproved real estate. After the land was subdivided, thirty parcels of approximately 20 acres each were sold under sales contracts providing for a 10% down payment and monthly principal and interest payments equal to 1% of the sales price.[1] Witte, a cash receipts and disbursements method taxpayer, reported gain derived from these sales under the "cost recovery" or "deferred payment" method.[2] Under that method, he initially treated income received from a sales contract as recovery of his basis in the property. Witte reported all income in excess of his basis as long-term capital gain in the year of receipt.

The Commissioner's deficiency determination rested on his finding that the amounts reported in 1962–64 as long-term capital gain should be taxed as ordinary income since such amounts were in part interest income and in part income from the sale of property held primarily for sale. See Herbert S. Witte, supra, at 1191. In the Tax Court, appellee argued that the land sales were completed transactions when made and that the entire gain from the sales was properly reportable in 1956–57 rather than upon receipt of monthly payments under the sales contracts. See id. at 1190–91. The Commissioner agreed that the cost recovery method was improperly invoked since the contracts had an ascertainable fair market value when entered into in 1956–57.[3] However, he argued that the income was reportable in 1962–64 since appellee could not alter his long-standing method of reporting gain without obtaining consent under section 446(e) of the Internal Revenue Code. The Tax Court concluded that the taxpayer could shift to the proper completed transaction method without the Commissioner's consent and therefore did not reach the other issues posed by the deficiency determination. Id. at 1193–94.

## II. MERITS

The Commissioner contends that the Tax Court erred in finding section 446(e) inapplicable. That section provides that "[e]xcept as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate." The applicability of the consent requirement turns on two issues—(1) whether the change from "cost recovery" to completed transaction treatment of the land sales constitutes a change in appellee's "method of accounting" and (2) whether the consent requirement applies when the taxpayer substitutes a proper accounting method for an improper one.

---

1. The sales contracts contained an unconditional promise to pay the full purchase price and provided for 6% annual interest on the unpaid balance. Herbert S. Witte, supra, at 1188.

2. See Treas.Reg. § 1.453–6(a)(2) (1958). The regulation provides that this method of accounting is available only when "the obligations received by the vendor have no fair market value" and cautions that "[o]nly in rare and extraordinary cases does property have no fair market value."

3. See Herbert S. Witte, supra, at 1191. The Tax Court found that the contracts had a fair market value of 75% of their face value when received by the taxpayer in 1956–57. It concluded that they were not speculative investments for which the cost recovery method was appropriate. See id. at 1192; cf. Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931).

■ The taxpayer's proposed shift from the cost recovery approach to completed transaction treatment constituted a "change in the method of accounting" within the meaning of the Treasury Regulations. That term is specifically described as including "a change in the overall plan of accounting" or "a change in the treatment of any material item." Treas.Reg. § 1.446–1(e)(2)(ii)(a) (1957). This case involves a "change in the treatment of [a] material item." The Tax Court opinion reveals that gain from payments for the 1962–64 period totalled more than $88,000.[4] Taxpayer's proposed shift to completed transaction treatment "involves the proper time for the inclusion of the item in income" and thereby satisfies the definition of "material item" set forth in the regulation. Treas.Reg. § 1.446–1(e)(2)(ii)(a), T.D. 7073, 1970–2 Cum.Bull. 99. Accordingly, the threshold requirement for the applicability of the consent provision has been met.

■ The principal question presented by this appeal concerns the validity of the Tax Court's conclusion that the taxpayer's . change in accounting method "was not precluded by section 446(e)." Herbert S. Witte, *supra,* at 1193. That section states that consent is required "[e]xcept as otherwise expressly provided in this chapter." The Tax Court made no reference to any section of the Code which "expressly" sets forth an exception to the consent requirement. Counsel for appellee does not direct us to any such provision.

The Tax Court relied on Underhill, 45 T.C. 489 (1966), for the proposition that no consent is required when the taxpayer seeks to change from an improper to a proper accounting method. *See* Herbert S. Witte, *supra,* at 1193. Although the *Underhill* decision is distinguishable from the present controversy,[5] it contains dicta suggesting that section 446(e) does not govern changes from an im-

4. This figure includes both monthly payments and payments of the balance of the purchase price for seventeen parcels. *See* Herbert S. Witte, *supra,* at 1190.

Although "no definite standards exist as to what constitutes a 'material item,' " George C. Carlson, P–H Tax Ct.Mem. ¶ 67,116, at 583, 585 (1967), Dorr-Oliver, Inc., 40 T.C. 50, 54 (1963), the real estate sales at issue here come within the tests adopted in prior decisions. Several courts have relied on comparable dollar amounts to find materiality. *See* Commissioner v. O. Liquidating Corp., 292 F.2d 225, 230 (3rd Cir.), cert. denied, 368 U.S. 898, 82 S.Ct. 177, 7 L.Ed.2d 94 (1961) ($114,000 insurance dividend deemed a material item); Dorr-Oliver, *supra,* at 53, 55 (rejecting a percentage test of materiality in a case involving a corporation with approximately $1,000,000 net income and finding a $25,000 change in the treatment of a $87,000 vacation and holiday pay item to be material). Other courts have combined dollar amount with percentage of taxable income in determining materiality. *See* Broida, Stone & Thomas, Inc. v. United States, 204 F.Supp. 841, 843 (N.D.W.Va.), aff'd, 309 F.2d 486 (4th Cir. 1962) ($6,660 personal property tax item which would add 10% to taxable income found material); George C. Carlson, *supra,* at 585 ($6,920 in license fees constituting 8.5% of taxable income deemed material).

5. *Underhill* involved an assessment of a deficiency based on payments received by the taxpayer on debt· obligations which he had purchased at a discount. Prior to the year in question, the taxpayer had reported a pro rata portion of the payments as income. In 1961, he changed to a cost recovery method of reporting without seeking or obtaining the consent of the Commissioner. The Tax Court stated that the "issue before us is the extent to which payments received by the petitioner are taxable or nontaxable—i. e., the character of the payment—not the proper method or time of reporting an item the character of which is not in question." 45 T.C. at 496. The Third Circuit in Poorbaugh v. United States, 423 F.2d 157, 163 (3d Cir. 1970), cited this passage in support of its conclusion that *Underhill* provided "no authority for the proposition that because an erroneous accounting method was adopted by the taxpayer he should not be subject to the tax consequences resulting from that method absent a consent to change it." Moreover, the court in *Underhill* ventured that in any event section 446(e)'s consent requirement would not apply because there was no danger of "a distortion of income 'to the detriment of the Government.' " 45 T.C. at 496, *quoting* Commissioner v. O. Liquidating Corp., 292 F.2d 225, 230 (3d Cir.), cert. denied, 368 U.S. 898, 82 S.Ct. 177, 7 L.Ed.2d 94 (1961). The danger of distortion presented in this case provides a principled distinction of *Underhill*

proper to a proper accounting method. 45 T.C. at 497. We reject that approach as contrary to the applicable Treasury regulations and subversive of the underlying purpose of section 446(e)'s consent requirement.

Regulation 1.446–1(e)(2)(i) states that "[c]onsent must be secured" to change an accounting method "whether or not such method is proper or is permitted under the Internal Revenue Code or the regulations thereunder." T.D. 7073, 1970–2 Cum.Bull. 98. Two of the examples set forth in the regulations indicate that the Commissioner's consent to switch accounting methods is necessary "[a]lthough [the present] method is not a proper method." Treas.Reg. 1.446–1(e)(2)(iii) (examples 7 & 8), T.D. 7073, 1970–2 Cum.Bull. 100. Supreme Court decisions mandate that "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948); see United States v. Catto, 384 U.S. 102, 113, 86 S.Ct. 1311, 16 L.Ed.2d 398 (1966). The Tax Court made no finding that it would be unreasonable or inconsistent with the statute to require taxpayers to obtain consent before shifting from an invalid to a valid accounting method.[6]

■ The purpose of the consent requirement is to enable the Commissioner to prevent distortions of income that often accompany changes in accounting methods by conditioning consent on the taxpayer's agreement to make correcting adjustments in his income tax payments.[7] The danger of distortion of income detrimental to governmental revenues exists regardless of whether the change in method is from one proper method to another or from an improper method to a proper one.[8] The consent requirement has as much vitality in the latter case as in the former. A prescribed method of accounting is not an

which the Tax Court overlooked. See discussion at text accompanying notes 7–12 infra.

The other cases cited by the courts below are also distinguishable, In Perelman, 41 T.C. 234, 241–42 & n.10 (1963), the Tax Court found that the Commissioner could "find no support in section 446(e) for his determinations since he was the one who caused the change to be made" and noted that the deficiency would be incorrect "[e]ven assuming, arguendo, that petitioners did change their method of accounting without first seeking the permission of the Commissioner." Thompson-King-Tate, Inc. v. United States, 296 F.2d 290, 294–95 (6th Cir. 1961), found that a taxpayer which had previously elected the completed contract method of reporting income from long-term construction contracts could not deviate from that method without permission from the Commissioner. The Sixth Circuit concluded that, since no consent to change methods had been obtained by the taxpayer and the Commissioner had not exercised his authority to order a change in accounting method, the taxpayer erred in departing from his elected method and could correct his error. By contrast, the instant case involves the taxpayer's retroactive attempt to deviate from his long-standing albeit erroneous accounting method without obtaining permission from the Commissioner.

6. See Commissioner v. O. Liquidating Corp., 292 F.2d 225, 231 (3d Cir.), cert. denied, 368 U.S. 898, 82 S.Ct. 177, 7 L.Ed.2d 94 (1961) (finding that the interpretation stated in the original regulations "is certainly not inconsistent with the statute.").

7. See, e. g., Woodward Iron Co. v. United States, 396 F.2d 552, 554 (5th Cir. 1968); Hackensack Water Co. v. United States, 352 F.2d 807, 810–11, 173 Ct.Cl. 606 (1965); American Can Co. v. Commissioner, 317 F.2d 604, 606 (2d Cir. 1963), cert. denied, 375 U.S. 993, 84 S.Ct. 632, 11 L.Ed.2d 479 (1964); Commissioner v. O. Liquidating Corp., 292 F.2d 225, 230 (3d Cir.), cert. denied, 368 U.S. 898, 82 S.Ct. 177, 7 L.Ed.2d 94 (1961).

8. See Brief for Appellant at 24.

Under the Tax Court's approach, appellee presumably would have been required to obtain the Commissioner's consent to change from the installment method to the completed contract method since both are proper methods of accounting for income derived from the sale of real property in which the vendor receives obligations with an ascertainable fair market value. One assumes that the Commissioner could properly have denied a request to make such a change since the elected installment method clearly reflects income. Alternatively, the Commissioner could have conditioned the change on a correcting adjustment that would prevent appellee from avoiding tax on his gain from the land sales. We are hard pressed to understand why appellee's improper choice of the more advantageous cost recovery method should negate the consent provision and require the Commissioner to invoke the Code sections mitigating the statute of limitations in an attempt to correct the distortion of appellee's income.

end in itself but rather a means toward fulfilling the statutory goal of accounting that "clearly reflects income."[9] And so it is that the Tax Court decisions subsequent to *Underhill,* which seem not to have caught the attention of the Tax Court in this case, have recognized that the purpose of the section 446(e) requirement demands its application *"even where the taxpayer's prior accounting method was improper."*[10] And this is the view of the circuit courts of appeals.[11]

The present case illustrates the salutary function of the consent requirement. Under the approach of the Tax Court opinion under review, the taxpayer might well avoid taxes on the gain from the land sales by claiming that he was no longer required to report the payments received on the contracts as gain because that income was reportable in 1956–57, years now barred by the statute of limitations.[12] The consent provision serves to prevent such distortion of income by requiring that the taxpayer either make a correcting adjustment prior to abandoning the cost recovery reporting of his gain on the sales or continue to employ that method thereby assuring that the gain does not escape taxation.

There is language in decisions relied on by the Tax Court, and the taxpayer, saying that a taxpayer is entitled to correct an error.[13] Of course he is, but he is not entitled to do so in a way that may distort income. If the Commission-

er had insisted on an adjustment that put an excessive condition on the correction of an error, it might well be held that he had abused his discretion to withhold approval of a change in accounting method. But that is not the case before us.

Our analysis of the statutory provisions, relevant regulations, and available precedents indicates that the Tax Court erred in finding section 446(e) inapplicable to this controversy. We remand the case for further proceedings with respect to the Commissioner's deficiency determinations.

So ordered.

---

**9.** Int.Rev.Code of 1954, § 446(b); Treas.Reg. 1.446–1(a)(2) (1957) ("no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income").

**10.** Bongiovanni, P–H Tax Ct.Mem. ¶ 71,262, at 1182, 1185 (1971), rev'd on other grounds, 470 F.2d 921 (2d Cir. 1972) (emphasis in the original); H. F. Campbell Co., 53 T.C. 439, 448 (1969), aff'd, 443 F.2d 965 (6th Cir. 1971).

**11.** *See, e. g.,* American Can Co. v. Commissioner, 317 F.2d 604, 606 (2d Cir. 1963); cert. denied, 375 U.S. 993, 84 S.Ct. 632, 11 L.Ed.2d 479 (1964); Wright Contracting Co. v. Commissioner, 316 F.2d 249, 254 (5th Cir.), cert. denied, 375 U.S. 879, 84 S.Ct. 147, 11 L.Ed.2d 110 (1963) (dictum); Commissioner v. O. Liquidating Corp., 292 F.2d 225, 230–31 (3d Cir.), cert. denied, 368 U.S. 898, 82 S.Ct. 177, 7 L.Ed.2d 94 (1961).

**12.** The extent to which the gain on the land sales would escape taxation depends on the availability of sections 1311–14 of the Code to remove the bar of the statute of limitations for the taxpayer's 1956 and 1957 returns. *See* Herbert S. Witte, *supra,* at 1193 n.7; Brief for Appellant at 14 n.5.

**13.** *See, e. g.,* Thompson-King-Tate, Inc. v. United States, 296 F.2d 290, 294 (6th Cir. 1961); North Carolina Granite Corp., 43 T.C. 149, 168 (1964).