T.C. Summary Opinion 2002-96

UNITED STATES TAX COURT

ROBERT AND LISA MORGANSTEIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 825-01S.                    Filed July 23, 2002.

<u>Jerry S. Goldman</u>, for petitioners.

<u>Carol-Lynn E. Moran</u>, for respondent.

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue.

Respondent determined deficiencies in petitioners' Federal income taxes of $21,725 and $5,002 for the taxable years 1996 and 1997.

The issue for decision is whether certain payments received by BMP Entertainment, Inc., an S corporation wholly owned by petitioner husband, are includable in income in the year in which they were received or in the year in which the corresponding services were rendered.[1]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Huntingdon Valley, Pennsylvania, on the date the petition was filed in this case.

During the years in issue, petitioner husband (petitioner) was the sole shareholder of an S corporation named BMP Entertainment, Inc. (BMP). BMP's business consists of providing entertainment for parties in the form of disc jockey and related services, primarily for bar mitzvahs. Petitioner often would enter into contracts on behalf of BMP for services to be rendered up to several years later. The contracts were based upon a standard form contract which provided nearly identical terms for each customer. In order to reserve a future date, customers were

---

[1]Respondent's adjustment to petitioners' miscellaneous itemized deductions is computational and will be resolved by the Court's holding on the issue in this case.

required to remit a downpayment at the time the contract was entered into. The amount of the required payment, labeled a "deposit", varied from contract to contract but was always listed as a portion of the total fee being charged for the services to be rendered. The standard terms provided that the entire payment would be retained by BMP upon cancellation by the customer, unless one of two circumstances occurred. Upon the occurrence of either of these circumstances, BMP would refund all of the payment, less a $150 nonrefundable "administrative fee".[2] A partial refund was available when: (1) The customer canceled an event due to death or life-threatening illness or injury of an immediate family member, or (2) the customer canceled with 6 months' advance written notice, provided BMP was able to find a comparable engagement for the same date and time. In order to promote his professional reputation, petitioner usually would make full refunds to canceling parties, despite the contractual terms.

In 1996, BMP received $87,660 in downpayments for services to be performed in subsequent years. In 1997, BMP received $22,865 in payments for such services. The payments were put into the same bank account as other business income, and the funds were not physically segregated in any manner. BMP was not

---

[2]In some cases, the amount of the downpayment was less than $150.

required to pay interest on the deposits, and the funds were available for general use by BMP.

At all relevant times, BMP used the cash method of accounting. Prior to the years in issue, BMP reported the downpayments received under the contracts as income in the year in which the payments were received. Beginning in 1996, pursuant to advice received from a newly hired accountant, BMP began reporting the payments as income in the year in which the contractual services were rendered. BMP did not file amended returns for prior years and did not request consent from the Secretary for a change in method of accounting.

BMP filed a Form 1120S, U.S. Income Tax Return for an S Corporation, in each of the years in issue. In 1996, BMP reported a loss of $103,217. In 1997, BMP reported income of $9,741. Petitioners filed a joint Federal income tax return for each of the years in issue. In 1996, they claimed a loss of $103,217 for petitioner's distributive share (100 percent) of BMP's loss. In 1997, they reported $9,741 for petitioner's distributive share (100 percent) of BMP's income.

In the statutory notice of deficiency, respondent determined that petitioners' income as reported on their returns was understated by $87,660 in 1996 and $22,865 in 1997--the amounts of the deposits received by BMP but not included in income on its returns.

Respondent's primary argument is that BMP must include the disputed amounts in gross income in the year in which they are received because they are "advance payments" rather than "deposits". Gross income generally includes income from whatever source derived, including compensation for services. Sec. 61(a)(1). For cash basis taxpayers, payments received in advance of performing services generally are included in income in the year in which the payments are received. Sec. 451(a); sec. 1.451-1(a), Income Tax Regs. In contrast, certain deposits received by taxpayers are not included in income where the taxpayer lacks "complete dominion" over the deposits. Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, 209 (1990). However, we need not decide whether the downpayments made by BMP's customers in this case constitute advance payments or deposits (or a combination of both), for the reasons discussed infra. Instead, we turn to respondent's alternative argument.

Respondent's alternative argument is that BMP changed its method of accounting without prior consent when it began deferring recognition of income until the performance of the related services. Subject to various restrictions, a taxpayer generally is entitled to compute taxable income for Federal income tax purposes under the method of accounting regularly used in keeping his books. Sec. 446(a). However, when a taxpayer changes the method of accounting regularly used in keeping his

books, he generally may not change to a new method of accounting to compute taxable income without the consent of the Secretary. Sec. 446(e). "Consent must be secured whether or not such method is proper or is permitted under the Internal Revenue Code or the regulations thereunder." Sec. 1.446-1(e)(2)(i), Income Tax Regs.

A change in the treatment of any material item in an overall plan of accounting constitutes a change in method of accounting. Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs. A "material item" is defined to include "any item which involves the proper time for the inclusion of the item in income". Id. Thus, an item is a material item if its change affects only the timing of the recognition of income while leaving lifetime taxable income unchanged. Schuster's Express, Inc. v. Commissioner, 66 T.C. 588, 597 (1976), affd. without published opinion 562 F.2d 39 (2d Cir. 1977). On the other hand, a change in method of accounting does not include "correction of mathematical or posting errors, or errors in the computation of tax liability". Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs.

The customer downpayments in this case clearly constitute a material item: BMP's change from recognizing the income upon receipt to recognizing the income upon the performance of the services is nothing more than a change in the timing of the recognition of the income; BMP's aggregate lifetime taxable

income is not affected. See <u>Schuster's Express, Inc. v.</u> <u>Commissioner</u>, <u>supra</u>; sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.

Petitioners argue that the change in the timing of the income was not a change in method of accounting, but it rather was a correction in the proper application of the cash basis method of accounting. Petitioners cite our opinion in <u>Evans v.</u> <u>Commissioner</u>, T.C. Memo. 1988-228, for the proposition that a taxpayer may correct an inadvertent mistake in the application of its method of accounting without the correction's constituting a change in method of accounting. In <u>Evans</u>, the taxpayers earned yearly bonuses which were authorized by their employer at annual board meetings but paid in each of the years subsequent to each of the meetings. The taxpayers historically had been including bonuses in income in the year in which the bonuses were authorized rather than the year in which they were received, despite the fact that the taxpayers otherwise used the cash method of accounting. The taxpayers had been relying on the Forms 1099 issued to them by the corporation through its accountant, who had no knowledge that the bonuses were received in a year other than the year they were declared. We found that, by changing the year of inclusion, the taxpayers did not "consciously" adopt a new form of accounting other than their overall cash method of accounting, and that the taxpayers were merely correcting "inadvertent errors analogous to posting

errors".[3]  Because the taxpayers had never adopted any method of accounting other than the cash method, there was no change in method of accounting requiring prior consent.

Evans is distinguishable from the present case.  Evans involved individual taxpayers who relied on informational returns issued to them by a corporation to complete their tax returns. In filling out their returns, the taxpayers presumably merely transferred the numbers from one form to the other, creating errors analogous to posting errors.  In the present case, BMP historically had consistently included the substantial and recurring downpayments in income in the year in which they were received.  Even if petitioner was not aware that there may have been an issue concerning the proper timing for the inclusion in income, he nevertheless consciously included the downpayments in income, thereby creating a method of accounting with respect to this material item.  There is no analogy to a posting error in this case, and it cannot be said that BMP never adopted the method of accounting at issue.

A case which is more directly on point is a case decided by the U.S. Court of Appeals for the Third Circuit,[4] Commissioner v.

---

[3]This Court has stated that a "posting error is an error in 'the act of transferring an original entry to a ledger.'" Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 510-511 (1989) (quoting Black's Law Dictionary 1050 (5th ed. 1979)).

[4]But for the provisions of sec. 7463(b), the decision in
(continued...)

O. Liquidating Corp., 292 F.2d 225 (3d Cir. 1961), revg. T.C. Memo. 1960-29. In O. Liquidating Corp., the taxpayer corporation received annual dividend payments which were attributable to insurance company surpluses earned in a prior year, but which were declared and distributed after the close of that year. The taxpayer recorded the dividends in its accounts in the year of the surpluses rather than in the year the dividends were declared and paid. Both the taxpayer and the Commissioner agreed that-- pursuant to the taxpayer's otherwise applicable accrual method of accounting--these dividends should have been reported in the year of their declaration and payment. The court found, however, that regardless of the impropriety of this treatment under the taxpayer's overall accrual method, the taxpayer was required to obtain consent before correcting the error.

The opinion in O. Liquidating Corp. is controlling in this case: Even if BMP was correcting the application of an overall cash method of accounting, it was nevertheless a change in its method of accounting which required the consent of the Secretary

---

⁴(...continued)
this case would be appealable to the U.S. Court of Appeals for the Third Circuit. See sec. 7482(b)(1)(A). This Court generally applies the law in a manner consistent with the holdings of the Court of Appeals to which an appeal of its decision lies, see Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), even in cases subject to sec. 7463(b).

under section 446(e).[5]  Because BMP did not obtain that consent, we sustain respondent's determination in the notice of deficiency that BMP must include the disputed amounts in income in the year in which they were received.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[5]Thus, whether the disputed amounts are "advance payments" or "deposits" under <u>Commissioner v. Indianapolis Power & Light Co.</u>, <u>supra</u>, is irrelevant because, under <u>Commissioner v. O. Liquidating Corp.</u>, <u>supra</u>, consent would be necessary to change the treatment of the amounts in either case.