**WOODWARD IRON COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 64–459.

United States District Court
N. D. Alabama, S. D.
June 10, 1966.

Paul Johnston and Meade Whitaker, of Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for plaintiff.

Macon L. Weaver, U. S. Atty., and E. Ray Acton, Asst. U. S. Atty., Birmingham, Ala., and Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, Myron C. Baum and Jack D. Warren, Attorneys, Department of Justice, Washington, D. C., for defendant.

## OPINION

LYNNE, Chief Judge.

Contending that the Commissioner erroneously disallowed deductions of state property taxes for the calendar years 1954, 1956, and 1957 [1] in the aggregate amount of $187,476.20, the plaintiff claims of defendant a refund of income

---

1. The determination by the Commissioner of Internal Revenue that Woodward Iron Company made an unallowable change in 1954 in its method of accounting gave rise to the tax deficiencies for each of the years in suit. A ruling as to whether the Commissioner's determination was correct with respect to 1954 will automatically resolve the issues involved as to 1956 and 1957. Therefore, for purposes of convenience and simplicity, the questions are framed and the case will be discussed with respect to 1954 only.

taxes for such years in the sum of $155,275.77, with interest as allowed by law. The relevant facts may be briefly stated.

Woodward Iron Company (hereinafter referred to as the plaintiff or taxpayer) is a Delaware corporation whose principal place of business is located at Woodward, Jefferson County, Alabama. Throughout the years in question it kept its books and reported its income on a calendar year basis, using the accrual method of accounting.

In Alabama, a lien is imposed on October 1 of each year for the payment of property taxes for the state's fiscal year, which begins on that day and ends on September 30 of the following calendar year. In 1953 and prior tax years, the taxpayer accrued and deducted these state property taxes ratably. For example, in 1953 it deducted 9/12 of the property taxes which became a lien on October 1, 1952, and 3/12 of the taxes which became a lien on October 1, 1953.

In 1954, the taxpayer changed its method of deducting state property taxes from the ratable accrual method to the lump-sum accrual method. However, since it had previously deducted only 3/12 of the taxes which became a lien on October 1, 1953, it also deducted some of the taxes ratably to avoid losing forever a deduction. Thus, in 1954, it deducted 9/12 of the taxes which became a lien on October 1, 1953, under the ratable accrual method, and it deducted 12/12 or all the taxes which became a lien on October 1, 1954, under the lump-sum accrual method. The effect of this was a deduction in the calendar year 1954 of property taxes relating to twenty-one months. There was, however, no deduction that year or any year thereafter of the same tax twice.

In making the foregoing change, the taxpayer did not obtain the consent of the Commissioner. Upon audit of the taxpayer's return for 1954, the Commissioner determined that the taxpayer had changed its method of accounting for a material item and, because the taxpayer had not obtained the consent of the Commissioner as required by section 446(e) [2] of the Internal Revenue Code of 1954,[3] disallowed the deduction of 9/12 of the taxes which became a lien on October 1, 1953. The effect of the Commissioner's determination was the disallowance of the change to the lump-sum method and the return of the taxpayer to the ratable method. The amount of the deduction disallowed was $187,476.20. The taxable income reported by the plaintiff in that year was $7,689,831.51.

The plaintiff's position with respect to the claim for refund may be summarized as follows:

(1) The plaintiff concedes that it changed its method of computing the

---

2. § 446—General Rule for Methods of Accounting.—

    (e) Requirement respecting change of accounting method.—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.

    Trea.Reg. § 1.446–1—General Rule for Methods of Accounting.—

    (e) Requirement respecting the adoption or change of accounting method. * * *

    (2) (i) Except as otherwise expressly provided in chapter 1 of the Code and the regulations thereunder, a taxpayer

who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. A change in the method of accounting includes a change in the over-all method of accounting for gross income or deductions, or *a change in the treatment of a material item*. Consent must be secured whether or not a taxpayer regards the method from which he desires to change to be proper. Thus, a taxpayer may not compute his taxable income under a method of accounting different from that previously used by him unless such consent is secured. (Emphasis added.)

3. All statutory references are to the Internal Revenue Code of 1954.

property taxes from the ratable accrual method to the lump-sum accrual method. It also acknowledges that such a change is a change in the method of accounting. However, it maintains that section 446(e) is inapplicable in this instance because the change was not voluntary but one required by a change in law in 1954, or more specifically, by the enactment of section 461(c) in 1954.[4]

(2) Plaintiff contends that under section 461(c) it was required to make an election if it desired to continue to deduct state property taxes under the ratable accrual method. It did not make such an election. Thus, having failed to do so, it argues that it was required by section 461(c) in 1954 to discontinue the ratable method and to adopt the lump-sum method. For this reason, it maintains no consent was necessary.

(3) Finally, assuming that the court should find that the change was voluntary, plaintiff argues that section 446(e) is inapplicable because the change was not a change in the treatment of a material item. Thus, it contends that the consent of the Commissioner was not required.

It is the Government's position that section 446(e) is applicable in all respects and that the taxpayer, therefore, may not compute its taxable income under the changed method. In the alternative, it is the Government's position that the taxpayer may not deduct from its income for 1954 property taxes relating to a period in excess of twelve months. This court does not reach the Government's alternative position in view of its conclusion below that the taxpayer was not free to change to the lump-sum method without the consent of the Commissioner.

■ The taxpayer's main argument is that it did not have to obtain the consent of the Commissioner because section 446(e) applies only to voluntary changes in method of accounting and the change in the instant case was required by law. This court does not quarrel with the proposition that section 446(e) is inapplicable to a change required by the law. The question of consent simply does not arise because both the taxpayer and the Commissioner are required to make the change. See North Carolina Granite Corp., 43 T.C. 149 (1964) (dictum). What does trouble the court, however, is whether the taxpayer was, in reality, compelled by the enactment of section 461(c) to make a change from the ratable accrual method to the lump-sum method.

■ The plaintiff argues that section 461(c) required all taxpayers in 1954 to use the lump-sum method in the absence of the exercise of the statutory election, whether they had previously been deducting real property taxes under the lump-sum accrual method or under the ratable

---

4. Section 461(c) Accrual of real property taxes.—

(1) In general.—If the taxable income is computed under an accrual method of accounting, then, at the election of the taxpayer, any real property tax which is related to a definite period of time shall be accrued ratably over that period.

(2) Special rules.—Paragraph (1) shall not apply to any real property tax, to the extent that such tax was allowable as a deduction under the Internal Revenue Code of 1939 for a taxable year which began before January 1, 1954. In the case of any real property tax which would, but for this subsection, be allowable as a deduction for the first taxable year of the taxpayer which begins after December 31, 1953, then, to the extent that such tax is related to any period before the first day of such first taxable year, the tax shall be allowable as a deduction for such first taxable year.

(3) When election may be made.—

(A) Without consent.—A taxpayer may, without the consent of the Secretary or his delegate, make an election under this subsection for his first taxable year which begins after December 31, 1953, and ends after the date of enactment of this title in which the taxpayer incurs real property taxes. Such an election shall be made not later than the time prescribed by law for filing the return for such year (including extensions thereof).

(B) With consent.—A taxpayer may, with the consent of the Secretary or his delegate, make an election under this subsection at any time.

accrual method. After reading the legislative history of section 461(c), the court is convinced that Congress did not intend such a result with respect to taxpayers who had previously been using the ratable method. However, a literal reading of the statute as written supports the taxpayer's interpretation. After the enactment of section 461(c) in 1954, if a taxpayer deducting property taxes under the ratable method wanted to continue to use that method, it had to make an election. See Rev.Rul. 539, 1957–2 Cum.Bull. 303 (by implication). Failing to do so, it had to change to the lump-sum method.

Nevertheless, it is important to note in the foregoing analysis that the taxpayer was required to make the change, *only if it failed to make an election.* And this, in the opinion of the court, is the crux of the case, for the plaintiff's contention that the change was required is true only to the extent that it did not make an election. Thus, the enactment of section 461(c) did not make it mandatory for the plaintiff to change to the lump-sum method. It could have continued to use the ratable method if it so desired. All that it needed to do was to inform the Commissioner of its decision to continue to use that method.

As stated above, this court agrees that section 446(e) does not apply to a change in method of accounting which is required by law. But in order for a taxpayer to take advantage of this exception to 446(e), it is the opinion of the court that the change must be mandatory, not optional. For example, section 461(c) as it existed in the original House bill made the ratable accrual of real property taxes mandatory.[5] If the section had remained in that form, a taxpayer using the lump-sum method would have had to make the change to the ratable accrual

method. It would not have been able to elect to continue to use the lump-sum method. Under those circumstances, this court feels that such a taxpayer would not have had to secure the consent of the Commissioner. But those circumstances clearly are not present here, for after the enactment of 461(c) the plaintiff could have continued to use the ratable method.

Summarizing, this court finds that the taxpayer was not compelled by the enactment of section 461(c) to change its method of accounting. By simple election it could have continued to deduct state taxes under the ratable accrual method. It is true that section 461(c) required the taxpayer to change to the lump-sum method absent an election. But it is the opinion of this court that that is not the type of "required change" which obviates the application of section 446(e). Accordingly, this court concludes that the taxpayer erred in failing to obtain the consent of the Commissioner to the change.

The plaintiff, however, seeks to avoid the application of section 446(e) on the ground that the change it made was not a change in the treatment of a material item. Specifically, plaintiff contends that the amount it sought to deduct in 1954 as a result of the change was insubstantial and relatively minimal in relation to its taxable income for that year. With respect to this contention, as the Tax Court stated in Dorr-Oliver Inc., 40 T.C. 50, 54 (1963), there are no clear standards for determining whether an accounting item is material. However, this court is convinced that $187,476.20— the additional amount taxpayer seeks to deduct as a result of the change—is definitely material under the facts of this case.[6]

---

5. Section 461(c) of H.R. 8300 in its original form read in part as follows:

SEC. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION.

(c) Accrual of real property taxes.—
(1) In General.—If the taxable income is computed under an accrual method of accounting, then any real property tax which is related to a definite period of time shall be accrued ratably over that period.

6. Compare Broida, Stone & Thomas, Inc. v. United States, 204 F.Supp. 841 (N.D. W.Va.), aff'd per curiam, 309 F.2d 486 (4th Cir. 1962); Dorr-Oliver Inc., 40 T.C. 50 (1963); I. Lewis Corp., 32 P-H Tax Ct. Mem. 41 (1963).

In accordance with the foregoing analysis, the court holds that the plaintiff made a change in its accounting method in 1954 without seeking or receiving the consent of the Commissioner as required by section 446(e), and that its income, therefore, cannot be computed in accordance with the changed method.

Judgment will be entered in favor of the defendant.