**WOODWARD IRON COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 24097.

United States Court of Appeals
Fifth Circuit.

June 20, 1968.

Meade Whitaker, Birmingham, Ala., for appellant.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., Harold C. Wilkenfeld, Howard J. Feldman, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before RIVES, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

"*A paradox, a paradox,*

*A most ingenious paradox!*" [1]

The taxpayer, through 1953 consistent in its *ratable* deductions of state ad valorem taxes, reads a 1954 statute as automatically transmuting it into taking *lump sum* deductions while urging that the congressional intent of the statute was to accommodate change from lump sum to ratable methods.

The taxpayer owns property in Alabama, in which state ad valorem taxes are assessed and collected on the basis of a fiscal year beginning October 1 and ending September 30. During the years in question the taxpayer used the calendar year as its accounting period and computed its income on the accrual basis. Through 1953 the taxpayer accrued and deducted state property taxes ratably on its federal income tax return. For example, in 1953 it deducted 9/12ths of the ad valorem assessment which became a lien on October 1, 1952 (ratably attributable to the months of January 1953 through September 1953), plus 3/12ths of the taxes which became a lien on October 1, 1953 (ratably attributable to the months of October 1953 through December 1953).

In 1954 the taxpayer changed its method of accounting for state property taxes from the ratable accrual method to the lump sum accrual method. Thus, it listed on its 1954 federal income tax return the entire state ad valorem tax assessment which became a lien on October 1, 1954. It also listed the taxes ratably attributable to the first nine months of 1954, which had not been deducted on the 1953 return. A total, then, of twenty-one months property taxes was set off against its 1954 income.

In making the foregoing change in its method of accounting for Alabama property taxes, the taxpayer did not obtain

---

1. Frederic. A paradox?
   Pirate King. A paradox!
   Ruth. A most ingenious paradox!
   \* \* \* \* \* \* \* \*
   King. Through some singular coincidence—I shouldn't be surprised if it were owing to the agency of an ill-natured fairy—
   You are the victim of this clumsy arrangement, having been born in leap-year, on the twenty-ninth of February,
   And so, by a simple arithmetical process, you'll easily discover,
   That though you've lived twenty-one years, yet, if we go by birth, you're only five and a little bit over!
   \* \* \* \* \* \* \* \*
   Fred. How quaint the ways of Paradox!   .
   At common sense she gaily mocks!
   Though counting in the usual way,
   Years twenty-one I've been alive,
   Yet, reckoning by my natal day,
   I am a little boy of five!
   All. He is a little boy of five! Ha! ha!
   A paradox, a paradox,
   A most ingenious paradox!
   Gilbert and Sullivan, *The Pirates of Penzance*, Act II.

the consent of the Commissioner. Following an audit of the taxpayer's returns, the Commissioner disallowed the change and reduced the property tax deductions to the amount taken under the ratable accrual method. The taxpayer paid the additional tax and filed for a refund. The district court upheld the Commissioner's determination and entered judgment for the government. Woodward Iron Co. v. United States, N.D.Ala.1963, 254 F.Supp. 835. The taxpayer appeals. We affirm.

We begin with Section 446(e) of the Internal Revenue Code of 1954, which requires a taxpayer to secure the consent of the Secretary or his delegate before changing his method of accounting:

> Sec. 446(e): *"Requirement Respecting Change of Accounting Method.*—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate." 26 U.S.C. § 446.

The reason for this rule is that a change in an accounting method will frequently cause a distortion of taxable income in the year of change; therefore, the Commissioner is empowered to prevent such distortion and consequent windfall to the taxpayer by conditioning his consent on the taxpayer's acceptance of adjustments that would eliminate any distortion. See Treas.Regs. §§ 1.446–1(c) (2) (ii), (e) (2), and (e) (3). See also Wright Contracting Co. v. C.I.R., 5 Cir. 1963, 316 F.2d 249, 254, cert. den., 375 U.S. 878, 84 S.Ct. 147, 11 L.Ed.2d 110; Hackensack Water Co. v. United States, 1965, 352 F.2d 807, 809–811, 173 Ct.Cl. 606 (and cases cited therein). Cf. United States v. Catto, 1966, 384 U.S. 102, 114–116, 86 S.Ct. 1311, 16 L.Ed.2d 398, 406–408.

■■ The district court found, and we agree, that a change from the ratable method of accruing property taxes to the lump sum method is a change of "a method of accounting" as provided in Section 446(e). See Rev.Rul. 60–133, 1960–1 Cum.Bull. 187. Likewise, we concur with the district court's finding that the change involved a "material item" of accounting and was thus covered by Section 446(e). See Treas.Regs. § 1.446–1(e) (2) (i). See also Wright Contracting Co. v. C.I.R., supra; Graff Chevrolet Co. v. Campbell, 5 Cir. 1965, 343 F.2d 568, 570 (footnotes 3 and 4 and accompanying text).

■ We therefore turn to the taxpayer's main contention on appeal, that Section 461(c) of the Code permitted the unilateral change to lump sum. Cf. John Wanamaker Philadelphia, Inc. v. United States, 1966, 359 F.2d 437, 439–441, 175 Ct.Cl. 169 (containing thorough analyses of both the general rule requiring Commissioner approval for changes in accounting methods and the exception to the general rule which occasionally arises when a taxpayer is given statutory authority to make specific changes); Scofield v. Lewis, 5 Cir. 1958, 251 F.2d 128; North Carolina Granite Corp., 1964, 43 T.C. 149.

Section 461(c), which was enacted in 1954, reads in relevant part:

> Sec. 461(c): *"Accrual of Real Property Taxes*—
>
> (1) In general.—If the taxable income is computed under an accrual method of accounting, then, at the election of the taxpayer, any real property tax which is related to a definite period of time shall be accrued ratably over that period."

The taxpayer focuses its argument on the phrase "at the election of the taxpayer." The argument proceeds thusly: The accrual of real property taxes can be accomplished through either ratable or lump sum methods; Section 461(c) (1) allows a taxpayer to use the ratable method, but only if he so elects; therefore, if he does not so elect, if he stands mute, he is automated into lump sum status (thereby averting the requirement of Commissioner consent under Section 446(e)).

We look first to the words of the statute which, though perhaps arguably susceptible to the taxpayer's interpretation, are not convincing in that regard. The words are permissive, not compelling, and on their face they permit the election of only the ratable method. In fact, the term "lump sum" is noticeably absent from the entire section. To read the words as granting an election to change from ratable to lump sum would require certain interpretative creativity which is to be avoided especially when it results in a distortion of taxable income.[2]

Statutes, however, are rarely read in isolation, and in this case both sides urge us to consider the legislative history of Section 461. The bill was originally passed by the House in terms making it manditory for accrual taxpayers to deduct real property taxes on a ratable basis.[3] The Report of the House Ways and Means Committee analyzed that bill as follows:

"Under present law a deduction for the payment of local property taxes accrues upon the date when the amount and liability for the tax become fixed. In many jurisdictions the amount and liability for a property tax for the calendar year 1955 would be fixed on a date late in 1954 and, under court decisions, is deductible for accrual basis taxpayers only at that time.

"The bill provides that an accrual basis taxpayer may in the future accrue a real property tax ratably over the period for which the property tax is imposed.

"Special rules are provided to cover the transitional problems which may arise as a result of the change." H. Rep. No. 1337, 83 Cong. 2 Sess. 50

(1954), U.S.Code Cong. Service pp. 4017, 4076 (1954).

"Subsection (c) is new. Real property taxes which relate to a definite period of time shall be treated by all accrual basis taxpayers as accruing ratably over that period. Under present law the tax is deemed to accrue at some definite moment which is determined by reference to State or local law fixing when the tax becomes a lien on the property or when personal liability for the tax arises or on some other basis. Under the proposed provision a real property tax for the calendar year 1954 regardless of when due, when a lien, or when the taxpayer becomes personally liable for the tax shall be treated as accruing ratably over the period for which the tax is levied." H.Rep. No. 1337, 83 Cong. 2 Sess. A 161–62, U.S.Code. Cong.Service, p. 4300 (1954).

The bill was changed to its present form by the Senate. The Report of the Senate Finance Committee notes the change and presents the most authoritative legislative analysis of the amended bill:

"Under present law a deduction for the payment of local property taxes accrues upon the date when the amount and liability for the tax become fixed. In many jurisdictions the amount and liability for a property tax for the calendar year 1955 would be fixed on a date late in 1954 and, under court decisions, is deductible for accrual-basis taxpayers only at that time.

"The House bill provides that an accrual basis taxpayer must in the future accrue a real property tax ratably over

---

2. In this regard we must differ with the district court below which determined that "a literal reading of the statute as written supports the taxpayer's interpretation." 254 F.Supp. at 838.

3. Section 461(c) of H.R. 8300, 83rd Cong. 2d Sess., in its original form read as follows:
"SEC. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION.

\* \* \* \* \*
(c) Accrual of Real Property Taxes.—
(1) In general.—If the taxable income is computed under an accrual method of accounting, then any real property tax which is related to a definite period of time *shall be accrued ratably* over that period." (Emphasis added.)

the period for which the property tax is imposed.

"Special rules were provided by the House to cover the transitional problems which might arise as a result of the change. These rules would create a gap in property tax deductions and would artificially inflate income in the year of transition for many taxpayers who had deducted 1954 taxes in an earlier year.

"Your committee's bill, therefore, provides that real property taxes related to a definite period of time may, at the election of the taxpayer, be accrued ratably over that period. Making the provisions elective will permit those taxpayers whose income would otherwise be distorted in the transition year to continue consistently the method under which their real property taxes have been accrued in the past. The transitional rules will apply only in those cases in which an election is made under this subsection." S. Rep. No. 1622, 83 Cong. 2 Sess. 66 (1954), U.S.Code. Cong. Service, pp. 4621, 4697–98 (1954).

"Subsection (c) is new. Your committee has provided that real property taxes which relate to a definite period of time may, at the election of an accrual basis taxpayer, be treated as accruing ratably over that period. Under present law the tax is deemed to accrue at some definite moment which is determined by reference to State or local law fixing when the tax becomes a lien on the property or when personal liability for the tax arises or on some other basis. Under the amended provision, if the taxpayer does not make the election, the result reached under present law will not be affected. Under the bill if the election is made a real property tax for the calendar year 1954 regardless of when due, when a lien, or when the taxpayer becomes personally liable for the tax shall be treated as accruing ratably over the period for which the tax is levied." S.Rep. No. 1622, 83 Cong. 2 Sess. 305 (1954), U.S.Code Cong. Service, pp. 4944–45 (1954).

The pivotal sentence in the above analysis is the following: "Under the amended provision, if the taxpayer does not make the election, the result reached under *present law* will *not be affected.* (Emphasis added.) The taxpayer argues that both the House and Senate reports demonstrate Congressional belief that the "present law" through 1953 required taxpayers to deduct state real property taxes on the lump sum basis. (Though this was not the law in 1953,[4] we do perceive such line of thought in the House and Senate reports.)[5] Therefore—the most ingenious paradox again —the congressional "innovation" allowing taxpayers to elect a ratable method

4. In Magruder v. Supplee, 1942, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555, the Supreme Court denied a purchaser and seller of land to apportion Maryland real estate taxes ratably over their respective periods of ownership. The court concluded:

"[I]t is misleading to speak of real estate taxes as 'applicable' to the fractional part of a tax period following purchase. Such taxes are simply one form of raising revenue for the support of the government. They are not rent, nor are they paid for the privilege of occupying property for any given period of time." 316 U.S. at 399, 62 S.Ct. at 1161.

That such statement had, before 1954, been restricted in most jurisdictions to purchaser-seller relationship is determinable by a review of post-*Magruder* cases. Allen v. Atlanta Stove Works, 5 Cir. 1943, 138 F.2d 452; Tennessee Life Ins. Co. v. Phinney, 5 Cir. 1960, 280 F.2d 38, cert. den., 364 U.S. 914, 81 S.Ct. 278, 5 L.Ed.2d 228; C. I. R. v. Schock, Gusmer & Co., Inc., 3 Cir. 1943, 137 F.2d 750. Moreover, there can be little doubt that ratability in a single taxpayer's returns was acceptable because this very taxpayer employed it with impunity for many years and with government approval.

5. And see a similar analysis at Austin, "The Internal Revenue Code of 1954: Tax Accounting," 68 Harvard L.Rev. 257, 264–66 (1954).

of accounting "would not affect" the taxpayer at bar if no election were made and thus would unilaterally change its method to the lump sum method.

The taxpayer's excursion into analytical jurisprudence meets several tests of sophistry but none of reality. It borders on naivete to believe that Congress, seeking to favor ratability in its legislative process, sub silentio sanctified lump-summing. Likewise untenable is the taxpayer's thesis that those using the ratable method before 1954 could use it after 1954 only by (1) getting off the ratable method and then (2) electing to get back on. It is exactly this saga of the peripatetic taxpayer which Section 446(e) attempts to prevent by requiring Commissioner approval of change.

We find the government's interpretation of the above legislative history to be more acceptable. The government argues that the Senate's change to the House bill did not enlarge the group of taxpayers covered by the House bill, i. e., it did not alter the status of those taxpayers already using the ratable method. The final bill merely permitted a choice to lump sum taxpayers, allowing them to remain on their old system and thus avoid distorting their income in the year of change.

The taxpayer's argument, based on the congressional mind, fails when such group analysis is performed in depth. If Congress knew that the "present law" allowed ratable accruing of real property taxes, the taxpayer's reliance on congressional reports fails by the sentence, "Under the amended provision, if the taxpayer does not make the election, the result reached under present law will not be affected." If, on the other hand, Congress assumed that property taxes were deductible only on a lump sum basis, Congress could not have intended to auto-mate ratable taxpayers into lump sum taxpayers because the former would have been perceptively non-existent. In effect, the taxpayer asks us to look to congressional *intent* rather than to a literal reading of the statute and at the same time to read the legislative history so literally that we enforce a misconception.

Excursions into the realm of congressional intent must not end with surface subtleties or legerdemain. An interpretation must probe deep to find the spirit of the statute and the true intent of its makers. National Woodwork Manufacturers Assoc. v. NLRB, 1967, 386 U.S. 612, 619, 87 S.Ct. 1250, 18 L.Ed.2d 357, 363–364; Lynch v. Overholser, 1962, 369 U.S. 705, 710, 82 S.Ct. 1063, 8 L.Ed.2d 211, 215 (and cases cited therein) ("'literalness may strangle meaning'"); C. I. R. v. Lester, 1961, 366 U.S. 299, 304, 81 S.Ct. 1343, 6 L.Ed.2d 306, 310 ("[T]he code must be given 'as great an internal symmetry and consistency as its words permit.'"); Feres v. United States, 1950, 340 U.S. 135, 139, 71 S.Ct. 153, 95 L.Ed. 152, 157 (placing the Tort Claims Act in perspective by emphasizing that it "should be constructed to fit, so far as will comport with its words, into the entire statutory system of remedies" and that it "was not an isolated and spontaneous flash of congressional generosity.") Certainly the intent of Congress was to open the door to ratable deductors. Such intent is inconsistent with with the taxpayer's contention that it was ejected from its ratable habitat.

Our tax laws are not perfect paradigms and our Congress not omniscient in the field. Despite an arguable inconsistency,[6] there can be no doubt that Congress intended to prevent distortion, not to create it.

Affirmed.

---

6. Congress was not the only agency of government which could not foresee problems such as the case at bar. We list chronologically the following administrative pronouncements which obviously are inconclusive in solving our problem and which indicate the unforeseeability by the Treasury and I. R. S. of this tax conundrum. T.D. 6118, 1955–1 Cum.Bul. 698, 716; Treas.Reg. § 1.461-1(a) (2), (c); Rev.Rul. 57-539, 1957-2 Cum.Bul. 303-4; Rev.Rul. 63-55, 1963-1 Cum.Bul. 105.