**COMPLETE FINANCE CORPORATION, Sandia Auto Electric, Inc., Lomas Warehouse, Inc., New Mexico Corporations, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 83–1907.**

United States Court of Appeals, Tenth Circuit.

July 1, 1985.

Melvin D. Rueckhaus, Albuquerque, N.M., for petitioners-appellants.

Gayle P. Miller, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Jonathan S. Cohen, with her on brief), Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before McKAY, SETH and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

The facts in this case have been stipulated, 80 T.C. 1062 (1983), and the only issues on appeal are questions of interpretation of the Internal Revenue Tax Code. The case involves three New Mexico corporations that were determined by the Commissioner to be brother and sister corporations within the definition found in 26 U.S.C. § 1563(a)(2) (1982).[1] Because of this classification as brother and sister corporations, the three corporations were entitled to only one surtax exemption between the three of them. This limitation increased the amount of total taxable income of the three corporations for the years in question.

Ownership of the three corporations was as follows:

| Shareholder | Lomas | Sandia | Complete |
| --- | --- | --- | --- |
| Joseph Chimenti | 14.12% | 20.50% | 5.67% |
| Josina Chimenti | 14.12% | 20.50% | 5.67% |
| Mark Wilson, Sr. | 14.12% | 20.50% | 5.67% |
| Barbara Wilson | 14.12% | 20.50% | 5.67% |
| Bart Chimenti | 10.30% | 3.00% | 0.00% |
| Bob Chimenti | 5.73% | 3.00% | 0.00% |
| Angela Chimenti | 5.73% | 3.00% | 0.00% |
| Mark Wilson, Jr. | 10.30% | 3.00% | 0.00% |

**1.** (a) Controlled group of corporations.—For purposes of this part, the term "controlled group of corporations" means any group of—

.　　.　　.　　.　　.

(2) Brother-sister controlled group.—Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing—

(A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and

(B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock in each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.

| Shareholder | Lomas | Sandia | Complete |
|---|---|---|---|
| Peggy Wilson | 5.73% | 3.00% | 0.00% |
| Patty Wilson | 5.73% | 3.00% | 0.00% |
| Lomas | 0.00% | 0.00% | 40.59% |
| Sandia | 0.00% | 0.00% | 36.73% |
| Totals | 100.00% | 100.00% | 100.00% |

Section 1563(a)(2) of the Internal Revenue Code provides that corporations are part of the brother-sister controlled group if two tests are met. The first test, the 80 percent test, requires that five or fewer persons hold at least 80 percent of the stock of each corporation in the controlled group. The second test, the 50 percent test, requires that more than 50 percent of the stock of each of the corporations in the brother-sister controlled group be held by the same five or fewer persons, counting the stock of each of the five only to the extent that a like amount of stock is owned in each of the corporations.

Section 1563(d)(2) sets forth the method for determining how much stock a shareholder owns. It provides that:

> For purposes of determining whether a corporation is a member of a brother-sister controlled group of corporations (within the meaning of subsection (a)(2)), stock owned by a person who is an individual, estate, or trust means—
>
> (A) stock owned directly by such person, and
>
> (B) stock owned with the application of subsection (e).

Subsection (e) provides for ownership by attribution. The attribution provisions at issue in this case are subsection (e)(4), which covers attribution from a corporation, and subsection (e)(5), which provides for attribution of ownership through a person's spouse. Subsection (e)(4) states that stock owned directly or indirectly by or for a corporation shall be considered as owned by any person who owns five percent or more of the corporation's stock, in the proportion that the value of the stock he owns in such corporation bears to the value of all the stock in the corporation. Subsection (e)(5) provides that an individual shall be considered as owning any stock owned directly or indirectly by or for his spouse with exceptions not applicable to this case.

The Commission applied the attribution provisions of section 1563 as follows: Joseph and Josina Chimenti were husband and wife at all times relevant to this case, as were Mark Wilson, Sr. and Barbara Wilson. Thus through direct ownership and attribution from their spouses, Joseph Chimenti and Mark Wilson, Sr. each owned 28.24 percent of the stock of Lomas, 41 percent of the stock of Sandia, and through both spousal and corporate attribution, 37.-86 percent of the stock of Complete. Bart Chimenti directly owned 10.30 percent of the stock of Lomas, 3 percent of the stock of Sandia and, though he owned no direct stock in Complete, through attribution from Lomas and Sandia he is deemed to have owned 4.18 percent of the Complete stock. Similarly, Bob Chimenti owned 5.73 percent of the Lomas stock, 3 percent of the Sandia stock, and through attribution owned 2.33 percent of the Complete stock. Mark Wilson owned directly 10.30 percent of the Lomas stock, 3 percent of the Sandia stock, and through attribution 4.18 percent of the Complete stock. Through focusing on these five individuals, the Commissioner determined that the 80 percent test and the 50 percent test were met as follows:

80–Percent Test—Section 1563(a)(2)(A)

| | Lomas | Sandia | Complete |
|---|---|---|---|
| Joseph Chimenti | 28.24 | 41.00 | 37.86 |
| Mark Wilson, Sr. | 28.24 | 41.00 | 37.86 |
| Bart Chimenti | 10.30 | 3.00 | 4.18 |
| Bob Chimenti | 5.73 | 3.00 | 2.33 |
| Mark Wilson, Jr. | 10.30 | 3.00 | 4.18 |
| Total | 82.81 | 91.00 | 86.41 |

50–Percent Test—Section 1563(a)(2)(B)

|  | Lomas | Sandia | Complete | Identical Ownership |
|---|---|---|---|---|
| Joseph Chimenti | 28.24 | 41.00 | 37.86 | 28.24 |
| Mark Wilson, Sr. | 28.24 | 41.00 | 37.86 | 28.24 |
| Bart Chimenti | 10.30 | 3.00 | 4.18 | 3.00 |
| Bob Chimenti | 5.73 | 3.00 | 2.33 | 2.33 |
| Mark Wilson, Jr. | 10.30 | 3.00 | 4.18 | 3.00 |
| Total | 82.81 | 91.00 | 86.41 | 64.81 |

■ On appeal, the taxpayers argue two propositions that they assert show that the Commissioner erred in concluding that these three corporations constituted a brother-sister controlled group. First, the taxpayers assert that before a person qualifies as one of the five or fewer persons owning stock in a brother-sister corporation, that person must own stock directly before any constructive ownership can be added by attribution. This assertion, however, defies the clear and express language of section 1563(d)(2), which provides that the Commissioner, in determining whether a corporation is a member of a brother-sister controlled group, must consider as stock owned by a shareholder both stock that the shareholder directly owns and stock that is owned by attribution. It is not without a great deal of semantic acrobatics that one can read this section as requiring both direct ownership and ownership by attribution. The taxpayers' reliance on *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 102 S.Ct. 821, 70 L.Ed.2d 792 (1982), for this proposition is unavailing. In *Vogel*, the Supreme Court merely held that the five control persons must own some stock in each of the corporations considered. The Court did not distinguish between direct ownership and ownership by attribution since the shareholder at issue in *Vogel* owned no stock in one of the corporations, either directly or by attribution. The taxpayers' proposed interpretation of section 1563 would make a mockery of plain English language and also undermine the intent of Congress in enacting the controlled-group provisions to prevent persons who have actual control of several corporations from shielding their tax liability through indirect ownership. We therefore reject the taxpayers' first argument.

■ Similar reasoning compels us to reject the taxpayers' second argument. The taxpayers argue that even though the wives' ownership in the corporations in question was properly attributed to the husbands, this attribution did not dilute the wives' actual ownership. They argue that, if the wives are considered as retaining their actual ownership of stock in the corporation, the five persons looked to by the Commissioner do not then own sufficient stock to meet the 50-percent test. The attribution section in question, section 1563(e)(5), does not, as the taxpayer correctly points out, provide that spouses shall be treated as one for purposes of determining ownership, but rather attributes spousal ownership to the stockholder being scrutinized. Under the literal language of the section then, not only would the spouse's interest not be diluted, but each spouse must be considered as owning both the stock he or she directly owns and the stock owned by his or her spouse. This argument, however, ignores section 1563(f)(3)(B), which provides:

> (B) If stock is owned (within the meaning of subsection (d)) by two or more persons, such stock shall be considered as owned by the person whose ownership of such stock results in the corporation being a component member of a controlled group.

Thus, the commissioner properly treated the stock as owned by the husbands and ignored the wives' ownership in making his controlled-group determinations.

Next the taxpayers argue that the Commissioner erred in applying corporate attribution rules to stock that had previously been attributed to the taxpayer through the spousal attribution rules. We agree with the tax court, however, that the statute contemplates repeated attribution of stock ownership except in those cases expressly excepted from the general rule by Congress.[2] While Congress did see fit in subparagraph (d) to prevent double application of the family attribution rules, there is nothing in the statute preventing application of both the family and the corporate attribution rules. Since Congress did not see fit to prevent both corporate and spousal attribution, we agree with the tax court that the Commissioner did not err in attributing corporate ownership to the husbands based on the stock in the corporations already attributed to them through spousal attribution.

The taxpayers' final claim is that the Commissioner exceeded his authority in adjusting the taxpayers' three-percent write-down of ending inventories. The taxpayers' corporations were in the business of selling auto parts. Each year the corporations wrote down their ending inventory by three percent to reflect their estimate of the value of inventory items that would be returned as unsalable by customers because of damage, shop wear, and imperfection. The applicable regulations provide that:

> Any goods in an inventory which are unsalable at normal prices or unusable in the normal way because of damage, imperfections, shop wear, changes of style, odd or broken lots, or other similar causes, including second-hand goods taken in exchange should be valued at bona fide selling prices less direct cost of disposition, whether subparagraph (1) or (2) of this paragraph is used.... Bona fide selling price means actual offering of goods during a period ending not later than 30 days after inventory date. The burden of proof will rest upon the taxpayer to show that such exceptional goods as are valued upon such selling basis come within the classifications indicated above, and he shall maintain such records of the disposition of the goods as will enable a verification of the inventory to be made.

Treas.Reg. § 1.471–2(c) (1960). The tax court held that the taxpayers failed to justify the three-percent write-offs by any objective evidence. On appeal the taxpayers have not pointed to any objective evidence that they introduced showing that their three-percent per year write-off was an accurate reflection of proper inventories as required by the statute and regulations. Therefore, we affirm the tax court's decision on this issue as well.

The judgment of the tax court is affirmed in all respects.

---

**2.** 26 U.S.C. § 1563(f)(2)(A) provides: "Except as provided in subparagraph (B), stock constructively owned by a person by reason of the application of paragraph (1), (2), (3), (4) [corporate attribution], (5) [spousal attribution], or (6) of subsection (e) shall, for purposes of applying such paragraphs, be treated as actually owned by such person. *See* Treas.Reg. § 1.1563–3(b)(4)(ii) (1965).