RICHARD M. AND ALYCE C. EVANS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent GEORGE C. AND CAROLYN L. EVANS, Petitiones v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evans v. Commissioner
Docket Nos. 35870-85; 35918-85.
United States Tax Court
T.C. Memo 1988-228; 1988 Tax Ct. Memo LEXIS 257; 55 T.C.M. (CCH) 902; T.C.M. (RIA) 88228; May 19, 1988. John C. Coggin III and J. Richard Duke, for the petitioners. J. Craig Young, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: In timely statutory notices of deficiency, respondent determined deficiencies in Federal income tax for taxable year 1978 in these consolidated cases as follows: Petitioners
deficiency
Richard M. and Alyce C. Evans
$  9,608.22
George C. and Carolyn L. Evans
51,825.58
After concessions, the issues for determination are: 1. Whether bonuses *258 authorized by their employer were constructively received by Richard and George Evans in 1978. 2. Whether petitioners adopted a change in their method of accounting for bonus income in 1978 without first securing respondent's permission as required by section 446(e). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Richard and Alyce Evans are husband and wife as are George and Carolyn Evans. [2] Both couples resided in Birmingham, Alabama, at the time their petitions herein were filed. George and Richard Evans were president and vice president, respectively, of Belcher-Evans *259 Millwork Co., Inc. ("the company"). George owned 80.77 percent of the company's outstanding common stock, while Richard owned the remaining 19.23 percent of outstanding shares. Each additionally served on the company's board of directors. The company is an Alabama corporation with its principal place of business in Birmingham, Alabama. It is engaged in the business of supplying door and window units, lock sets, and other hardware to customers in the home building business. The company uses the calendar year as its tax year and maintains its books using the accrual method of accounting. The company holds its annual meeting of stockholders and directors on or about November 15 of each year. At least since 1975, it has been company practice to authorize the award of special merit performance bonuses to its officers and certain other employees at the annual meeting. Bonuses in the following amounts were authorized to be awarded to petitioners at the 1975 through 1978 annual meetings: Date
Amount
Authorized
Richard Evans
George Evans
November 15, 1975
$  8,000
$  20,000
November 15, 1976
20,000
50,000
November 15, 1977
20,000
60,000
November 15, 1978
25,000
100,000
*260 In each year, the authorizing language of the award as contained in the minutes of the annual meeting specified that the bonuses were payable "during the calendar year * * * or not later than March 15 of the following year as working capital is made available for their payment." The company accrued the bonuses on its books when authorized and deducted them in arriving at its taxable income for those years. In each of the years 1975 through 1978, the bonus authorized at that year's annual meeting was paid to petitioners in the subsequent taxable year. Richard Evans received his bonus in cash. He included the bonuses authorized in 1975, 1976, and 1977 in his taxable income during the year of authorization. The $ 25,000 bonus authorized at the 1978 annual meeting was paid to him on March 14, 1979. This bonus was included in his income for taxable year 1979. George Evans was not paid his bonus in cash due to the possible adverse consequences to the company's financial position of paying such relatively large sums in cash. Rather, George received his bonuses in the form of a series of interest-bearing promissory notes. He included the bonuses authorized in 1975, 1976, and 1977 *261 in his taxable income during the year authorized. In payment of the $ 100,000 bonus authorized at the 1978 annual meeting, George received ten $ 10,000 promissory notes in late February of 1979. The notes were all dated January 1, 1979. George included the $ 100,000 bonus authorized in 1978 in his taxable income in 1979, the year he received the notes. [3]
Respondent determined that both Richard and George Evans had erroneously failed to include the bonuses authorized in 1978 in their taxable incomes for that year. Specifically, respondent determined that petitioners were in constructive receipt of these bonuses in 1978. He thus increased the 1978 taxable income of Richard and George by $ 25,000 and $ 100,000, respectively. [4] Respondent also determined that petitioners changed their methods of accounting for bonus income *262 from the accrual to the cash method in 1978; that petitioners had failed to obtain permission from respondent for these changes as required; that petitioners must therefore use the accrual method of accounting for bonus income in 1978; and that the bonuses authorized in 1978 are properly accruable in that year. OPINION The determinations of respondent in his statutory notices of deficiency are presumptively correct and petitioners bear the burden of proving otherwise. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Constructive Receipt Issue
Income is taxable when "actually or constructively" received. Sec. 1.446-1(c)(i), Income Tax Regs. A taxpayer is in constructive receipt of income in the year during which it is credited to his account, set aside for him, or otherwise made available to be drawn upon or could have been drawn upon had notice of intention *263 to do so been given. However, income is not constructively received if the taxpayer's control over its receipt is subject to "substantial limitations or restrictions." Sec. 1.451-2(a), Income Tax Regs. The purpose of the constructive receipt doctrine is to prevent a taxpayer from turning his back on income he has a right to receive and thereby select in which year he will report it. The doctrine is sparingly used and is invoked only when it is clear that the taxpayer has an unrestricted right to receive payment and his failure to do so is attributable to exercise of his own choice. Basila v. Commissioner,36 T.C. 111, 115-116 (1961), quoting Gullett v. Commissioner,31 B.T.A. 1067, 1069 (1935). Whether or not the constructive receipt doctrine applies is a question of fact. Hughes v. Commissioner,42 T.C. 1005, 1015 (1964). Petitioners argue that their rights to receive their bonus payments in 1978 were subject to substantial restrictions. Specifically, they contend that no bonuses could be paid until after it had been determined that the company possessed sufficient working capital to pay the bonuses without endangering its *264 financial position. They further contend that such a determination could not be made until after the company's accountant had completed the annual yearend accounting work in early 1979. Respondent maintains that there were no substantial limitations on petitioners' right to receive their bonuses during 1978. He interprets the bonus-authorizing minutes as merely requiring that sufficient working capital be available from which bonus payments could be made rather than requiring that a formal determination of working capital be made prior to any payments. Respondent points to the company's December 31, 1978 balance sheet, which he contends shows sufficient working capital on hand at December 31, 1978, with which to make bonus payments. He also contends that George was intimately familiar with the company's financial position at the end of 1978 and that Richard could have easily determined the amount of working capital available at the end of 1978. Respondent also finds significant the fact that both George and Richard had the power to write checks on the company's account without the necessity of securing a counter signature. Respondent thus attributes the failure of petitioners *265 to receive their bonuses in 1978 not to any limitations on their right to receive payment, but to their personal choice to defer payment into 1979. On the particular facts herein, we hold that neither petitioner was in constructive receipt of the bonus authorized to be paid to him in 1978 at any time in 1978. We disagree with respondent's contention that petitioners had an unfettered right to draw their bonuses in 1978. We regard the authorizing language conditioning the payment of any bonuses prior to March 15, 1979, on the availability of sufficient working capital as imposing a substantial limitation on petitioners' rights to receive payment prior to that date. The balance sheet which respondent contends shows adequate working capital on hand at December 31, 1978, could not have been prepared until after the yearend accounting work had been completed and the company's books closed. It therefore would have been unavailable for use by petitioners in ascertaining working capital before then. [5] While the bonus resolution does not require a formal determination of working capital, we think it only prudent and in keeping with management's fiduciary responsibility to the company *266 that such a formal determination be made before corporate assets were expended rather than relying on general knowledge of the company's overall financial position. Respondent's argument that the company could have borrowed the funds to pay the bonuses in unpersuasive. The bonus resolution specifically provides that the right to payment prior to March 15, 1979, is conditioned on the availability of *267 working capital. Ohio Battery & Ignition Co. v. Commissioner,5 T.C. 283 (1945), is clearly distinguishable. In that case the controlling shareholder's right to receipt of his salary payments was unconditional. The taxpayer could not defeat application of the constructive receipt doctrine merely because the corporation had insufficient cash on hand with which to satisfy its obligation when it had the resources to readily acquire the cash through credit. Respondent places much emphasis on the fact that petitioners were controlling shareholders of the company. However, the mere authorization by a corporation of compensation to be paid to an officer does not constitute constructive receipt of the authorized amounts even through the officer has the power to cause payment at any time by virtue of his control of the corporation. Hyland v. Commissioner,175 F.2d 422, 424 (2d Cir. 1948). it is the possession of the right (and not merely the power) to receive funds which forms the basis of the doctrine of constructive receipt. F. D. Bisset & Son, Inc. v. Commissioer,56 T.C. 453, 463 (1971). The term "right" connotes an ascertainable *268 and leegally enforceable power. United States v. Byrum,408 U.S. 125, 137 (1972). Here petitioners had no "right" to demand payment of the bonuses prior to March 15, 1979, unless the company had sufficient working capital available. Even though it was petitioners who would make this determination, it still constitutes a significant limitation on their right to demand payment since they had a fiduciary duty as controlling shareholders and directors to make this determination in good faith and in the company's, rather than their personal, best interest. There is no evidence that petitioners acted in bad faith in deferring the bonus payments into 1979. On the contrary, the decision to do so appears to have been motivated by genuine business considerations. We thus find that there were substantial restrictions on petitioners; right to demand payment of their bonuses in 1978. Therefore, there was no constructive receipt of the bonuses in that year. [6]
*269 Change of Accounting Method Issue
Respondent also contends that petitioners used the accrual method of accounting for bonuses in years prior to 1978 and that they each changed to the cash method in 1978. Since petitioners did not seek permission to change to the cash method, respondent determined that they must continue to use the accrual method of accounting for bonuses in 1978. He determined that the bonuses authorized at the 1978 annual meeting were accruable in 1978 and increased petitioners' taxable income accordingly. Petitioners argue that they were never on the accrual method of accounting for bonuses in years prior to 1978, and that no change of accounting occurred in 1978. Rather, they argue that they erroneously applied the cash receipts method in previous years in which bonus income was reported prior to its actual receipt. Alternatively, petitioners argue that even if required to use the accrual method of accounting for bonuses, the bonuses authorized in 1978 were not accruable until 1979. Section 446(e) prohibits taxpayers form changing their method of accounting without the prior consent of respondent. A change in method of accounting includes a change *270 in the taxpayer's overall method of accounting as well as a change in the accounting treatment of any "material item." A material item is any item which involves the proper time for inclusion of the item in income. Sec. 1.446-1(c)(2)(ii)(A), Income Tax Regs. However, correction of arithmetic, posting or computational errors do not constitute a change in accounting. Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. The purpose of the consent requirement of section 446(e) is to condition a proposed change in accounting on the taxpayer's agreement to make appropriate adjustments to remove any distortions of income which often accompany accounting changes. Witte v. Commissioner,513 F.2d 391, 394 (D.C. Cir. 1975), revg. and remanding T.C. Memo. 1972-232. [7] See also Woodward Iron Co. v. United States,396 F.2d 552, 554 (5th Cir. 1968; Commissioner v. O. Liquidating Corp.,292 F.2d 225, 230 (3d Cir. 1961). *271 Neither the Code nor the regulations define the terms "accounting" or "method of accounting." However, the terms are commonly understood to encompass those practices and procedures employed by a taxpayer on a consistent basis to determine his treatment of recurring material items of income and expense, whether that treatment is proper or improper. H. F. Campbell Co. v. Commissioner,53 T.C. 439, 447 (1969), affd. 443 F.2d 965 (6th Cir. 1971); Shepherd Construction Co. v. Commissioner,51 T.C. 890, 898 (1969). See sec. 1.446-1(e)(2)(iii) ex. (7), Income Tax Regs. Although it is clear that petitioners changed the timing of their recognition of bonus income, we hold that such change was attributable to errors in their past reporting rather than a change in their method of accounting. A change in a method of accounting presupposes that the method from which the taxpayer is changing was adopted at some point in the past. Silver Queen Motel v. Commissioner,55 T.C. 1101, 1105 (1971). We do not believe that petitioners ever "adopted" the accrual method of accounting for bonus income despite the fact that bonuses were *272 included in taxable income in the year of authorization rather than the year of receipt for tax years 1975, 1976, and 1977. It has been conceded that petitioners were on the cash method for all other items of income and expense. No explanation has been offered as to why they would have adopted the accrual method for bonus income only. Richard testified that he knew little of the financial aspects of the company business. It appears likely that Richard merely acquiesced in reporting the bonus income in the year it was reported on the form 1099 issued to him by the company's bookkeeper, rather than consciously adopting a new form of accounting. The company's accountant testified credibly that he included the notes received by George in taxable income in the year that the notes were dated since he had no knowledge that they were actually received by Richard at a later date. Inclusion of the bonuses in the year of authorization would thus have been attributable to a misapplication of the cash method rather than adoption of the accrual method. [8] In sum, we conclude that petitioners did not change their method of accounting within the meaning of section 446(e), but rather, corrected *273 inadvertent errors analogous to posting errors. Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs.; Korn Industries, Inc. v. United States,532 F.2d 1352, 1355-1356 (Ct. C1. 1976). [9]
The reliance respondent places in Witte v. Commissioner, supra, is misplaced. Witte stands for the proposition that section 446(e) requires consent from *274 respondent for a change of accounting even when the method of accounting from which the taxpayer seeks to change is an improper method. Witte v. Commissioner, supra at 395. Thus it presupposes that the taxpayer's prior treatment constituted a method of accounting, albeit an erroneous one. Similarly, George v. Commissioner,27 B.T.A. 765 (1933), is clearly distinguishable. In George the taxpayer had consistently reported his bonus income in the year authorized. He sought to change to the cash method not out of realization that his previous treatment had been inadvertently inconsistent with his adopted method of accounting, but as a result of discovering that many of his coworkers reported their bonuses on the cash method. Since no change of accounting method has been made, permission from respondent to utilize the cash method is not required. Petitioners may thus include the bonuses authorized in 1978 in their taxable income in 1979 -- the year the bonuses were received. [10]
*275 To reflect the foregoing, Decision will be entered under Rule 155 in docket No. 35870-85. Decision will be entered for the petitioner in docket No. 35918-85.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. Alyce and Carolyn Evans are petitioners solely by reason of having filed joint Federal income tax returns with their husbands for the taxable year at issue. Hereinafter references to "petitioners" shall be references to Richard and George Evans only. ↩
3. George considered the notes to be the equivalent of cash and thus reported them as income in the year of receipt. See Cowden v. Commissioner,289 F.2d 20 (5th Cir. 1961), revg. and remanding 32 T.C. 853 (1959), on remand T.C. Memo. 1961-229↩. Since neither party has questioned this assumption, we accept it. 4. Respondent also increased Richard's taxable income by $ 408.40 of unreported interest income. This adjustment has been conceded. Automatic medical expense and sales tax adjustments were also made. The propriety of these adjustments will turn on resolution of the bonus issue. ↩
5. Furthermore, we are not convinced that the balance sheet conclusively establishes that the company possessed sufficient liquid assets with which to pay the bonuses. At the November 15, 1978 annual meeting, $ 165,672.65 in bonuses were authorized. The December 31, 1978 balance sheet indicates cash on hand on that date of $ 166,073 and investments of unspecified liquidity of $ 159,934. Additionally, the company had accounts payable of $ 297,719.21 and was soon to incur additional obligations with regard to proposed plant expansion and the purchase of a computer system. Under these circumstances, we think it far from clear that a prudent business manager would have concluded that the authorized bonuses could be paid without threatening the financial position of the company. ↩
6. Respondent's reliance on several cases n which controlling shareholders were found to be in constructive receipt of bonuses or other compensation authorized by the board of directors to be paid to them is misplaced. Each case is clearly distinguishable. In Haack v. Commissioner,T.C. Memo. 1981-13, the taxpayer's contention that his right to receive a bonus was restricted by the corporation's "long-standing custom" of paying the bonuses two months after authorization was rejected. Here, in contrast to a mere "custom" the restriction on petitioners' right to demand immediate payment of the authorized bonus was contained in the authorizing resolution itself. Similarly, the corporate resolutions in W. C. Leonard and Co. v. United States,324 F. Supp. 422 (N.D. Miss. 1971) and Cooney v. Commissionr,18 T.C. 883 (1952), were unequivocal in granting the taxpayers an unconditional immediate right to demand payment. In W. C. Leonard and Co., the resolution authorized payment of bonuses "to the same people and in the same amounts that wre paid last year" without condition. In Cooney,↩ the resolution was equally unambiguous authorizing that $ 10,000 bonuses be paid to the president and vice president of the company in December. 7. IN Witte the Court of Appeals held that the Commissioner's consent is required under sec. 446(e) even when changing from an improper method to a proper one. Although this Court has not tended to require the Commissioner's consent in such situations, see Complete Finance Corp. v. Commissioner,80 T.C. 1062, 1072 n. 8 (1983), affd. 766 F.2d 436↩ (10th Cir. 1985), we have not questioned the general purpose of the consent requirement. 8. See Gimbel Bros., Inc. v. United States,535 F.2d 14, 23↩ (Ct. C1. 1976) (failure of the taxpayers to apply the installment method to certain rotating charge accounts did not result in adoption of a hybrid accounting method but was merely an error in application of the installment method). 9. Compare Superior Coach of Florida, Inc. v. Commissioner,80 T.C. 895 (1983) and Hooker Industries, Inc. v. Commissioner,T.C. Memo. 1982-357, in which we distinguish Korn Industries, Inc. v. Commissioner,532 F.2d 1352↩ (Ct. C1. 1976). In both cases we found that the taxpayer's treatment was deliberate and conscious, and not inadvertent or mistaken. We thus found that the changes sought were changes in accounting method and not merely error corrections. 10. Our holding that petitioners are entitled to use the cash method of accounting for bonuses renders unnecessary the consideration of petitioners' alternative argument -- that the bonuses were not accruable in 1978. ↩